STATE of Missouri, Respondent,

v.

Stephen K. HARRIS, Appellant.

No. WD 33879.

Missouri Court of Appeals,
Western District.

Oct. 11, 1983.

James W. Fletcher, Public Defender, Anne Hall, Asst. Public Defender, Kansas City, for appellant.

John Ashcroft, Atty. Gen., Janet E. Papageorge, Asst. Atty. Gen., Jefferson City, for respondent.

Before TURNAGE, C.J., and DIXON and CLARK, JJ.

TURNAGE, Chief Judge.

Stephen Harris was found guilty by a jury of the Class A Felony of armed criminal action in violation of § 571.015 RSMo 1978. In accordance with the verdict the court pronounced sentence of 20 years confinement.

On this appeal, Harris contends a poll of the jury revealed that the verdict was not unanimous. Affirmed.

Harris does not contest the sufficiency of the evidence. Suffice it to say that Williams accosted a filling station attendant in the early morning hours of November 26, 1981, forced him at gunpoint to enter the station, and ordered him to fill a sack with money. Harris later shot the attendant twice with the handgun he was carrying.

After the jury returned with its verdict finding Harris guilty the court inquired if either party desired that the jury be polled. Counsel for Harris requested the court to poll the jury. The court informed the jury that it would ask each juror if the verdict just read was the juror's own individual verdict. The court then called the names of 9 jurors who each responded "yes." When the court called the name of Juror Hughes the juror replied "no—I mean yes." The following then occurred:

THE COURT: Is your answer no? That is not your verdict? Either it is or it isn't.

JUROR HUGHES: Yes.

THE COURT: I want you to understand I'm not putting pressure on you, this must be your verdict.

JUROR HUGHES: Yes.

The court called on another juror who responded "yes." The following then occurred:

THE COURT: Emma J. Spears.

JUROR SPEARS: Yes.

THE COURT: Your answer is yes?

JUROR SPEARS: Yes.

The court thereupon stated that the verdict was accepted.

The court expressed appreciation to the members of the jury for their service. Before the jury was excused, counsel for Harris told the court, in the presence but out of the hearing of the jury, that there was hesitation on the part of two of the jurors and requested that those two be asked to remain so that they could be questioned out of the presence of the jury to make a final determination as to what their verdict was. The court responded as follows:

THE COURT: You have made your request, I am not going to adhere to that request, I think I have asked them enough questions to determine what that situation was. If you want to question them and make that a basis for your appeal, you are entitled to do that, it is obvious it was a difficult decision for

these people. When asked the question on at least two occasions, the juror did not equivocate in the responses as far as this Court was concerned.

The court thereupon excused the members of the jury. Counsel for Harris did not accept the invitation of the court to question members of the jury further, and counsel made no further request nor any further mention of the incident.

In the motion for new trial, and on this appeal, counsel contends that there was great hesitation on the part of Juror Spears when she was polled because she hesitated for a significant time and finally said "yes" to the question of whether or not the verdict was hers. Harris contends that Juror Spears appeared very reluctant to confirm that the verdict was hers and appeared to have been weeping. The motion alleged that an affidavit had been obtained from Juror Hughes which indicated that the verdict was not her verdict. On appeal, Harris contends that Jurors Spears and Hughes were hesitant and gave equivocal responses to the poll, and that the court coerced Juror Hughes into accepting the verdict as her own.

The only record before this court is that set out above. This reveals that Juror Hughes said "no—I mean yes." The record indicates the court told Juror Hughes that the verdict was either hers or it was not and she replied "yes." The court further told Juror Hughes that it wanted her to understand that no pressure was being put on her, but that the verdict must be hers and in response to that Juror Hughes again said "yes."

■ On this record, it cannot be said that the court coerced Juror Hughes into accepting the verdict as her own. The court clearly stated that no pressure was being put on the juror and the juror again said "yes." The record does not indicate any hesitation on the part of Juror Hughes, nor does it indicate a lapse of time before her response. Certainly the record does not indicate that Juror Hughes was or had been weeping. Rather, the record suggests that Juror Hughes answered "no" by mistake and promptly corrected the mistake by saying that she meant "yes." In light of the record it cannot be said that the court coerced Juror Hughes into saying that the verdict was hers.

■ Further, the affidavit of Juror Hughes may not be considered to impeach the verdict because jurors may not impeach their verdict by oral testimony or by affidavit. *State v. Smith,* 298 S.W.2d 354, 356[4] (Mo.1957).

■ With reference to Juror Spears, the record does not show hesitancy in her answer. Absent a record to provide an evidentiary basis upon which the point could be considered, the argument concerning Juror Spears must be ruled against Harris. *State v. Bluitt,* 592 S.W.2d 752, 754 (Mo. banc 1980).

The judgment is affirmed.

All concur.