STATE of Missouri, Respondent,

v.

Nila Jeanne WACASER, Appellant.

No. 70726.

Supreme Court of Missouri,
En Banc.

July 31, 1990.

Nancy McKerrow, Columbia, for appellant.

William L. Webster, Atty. Gen., John M. Morris, Asst. Atty. Gen., Jefferson City, for respondent.

BLACKMAR, Chief Justice.

The defendant was initially charged with two counts of first degree murder in the stabbing deaths of her sons Jeremy, aged 11, and Eric, aged 8. Before trial the state entered a nolle prosequi of Count I, relating to Jeremy, and the trial proceeded on Count II, charging the murder of Eric. The jury found the defendant guilty as charged but was unable to agree on the punishment. The trial judge then proceeded in accordance with § 565.030.4, RSMo 1986, finding three statutory aggravating circumstances and sentencing the defendant to death. The appeal from the judgment and sentence is consolidated with an appeal from the denial of her motion under Rule 29.15, which was heard by another judge. We reverse the conviction and remand for a new trial because of error in the failure to sustain a challenge to a venireman for cause. This holding moots the 29.15 appeal. Of the remaining 29 points, we need consider only those which are likely to present problems on retrial.

1. *Overruling of Challenges for Cause*

The defendant argues that the trial court committed reversible error in overruling her challenge for cause to jurors Beavers and Morelock. The questioning of Beavers continued over many pages of the transcript. The problem is best illustrated by quotation, as follows:

MRS. CHAPMAN: I'm sorry. Mr. Beavers, you said you were not against the death penalty. Are you automatically in favor of the death penalty in every case of murder in the first degree.

JUROR BEAVERS: Not every case, no.

MRS. CHAPMAN: When you say "not every case," what do you mean? Do you tend to favor the death penalty in most cases of murder in the first degree?

JUROR BEAVERS: Not necessarily. I would say in this particular case with a child involved I might have a tendency to lean toward the death penalty.

MRS. CHAPMAN: You would just by virtue of that fact alone?

JUROR BEAVERS: That's correct.

MRS. CHAPMAN: Is that a pretty strong feeling on your part?

JUROR BEAVERS: I would have to say there would have to be some very

strong mitigating circumstances. Right now, I couldn't imagine any.

MRS. CHAPMAN: You couldn't imagine any mitigating circumstances?

JUROR BEAVERS: Right.

MRS. CHAPMAN: So, is it fair to say that it would be pretty difficult for you to consider mitigating circumstances in such a case?

JUROR BEAVERS: I would say so, yes.

MRS. CHAPMAN: So, if the law and you were instructed as to the law in requiring additional evidence from the prosecutor and requiring you to consider mitigating circumstances, you'd have some difficulty because of your feelings considering those instructions.

JUROR BEAVERS: Yes, I would.

MRS. CHAPMAN: You would?

JUROR BEAVERS: Yes, I would.

\*   \*   \*   \*   \*   \*

MR. CHANCELLOR: But, I believe in questioning from Susan Chapman you said, because this involves the death of a child, you would tend to lean toward the death penalty. Is that more or less what you said?

JUROR BEAVERS: That's correct.

MR. CHANCELLOR: What I want to ask you is, do you think honestly in your own mind you could sit and fairly listen to the evidence and apply the law from The Court to that evidence and render a fair verdict in this case, keeping in mind this involves the death of a child?

JUROR BEAVERS: If we're talking about a verdict of innocent or guilty, yes.

MR. CHANCELLOR: As far as punishment goes do you think you can render a fair verdict as to punishment based upon the evidence and the law?

JUROR BEAVERS: That I'm not sure about. I think I would have a tendency in terms of punishment to lean toward the death penalty, in a case like this.

\*   \*   \*   \*   \*   \*

MR. CHANCELLOR: Mr. Beavers, you're not on trial. The defendant, Nila Wacaser, is. Can you sit and be a fair and impartial juror in her case? Can you, again, listen to the evidence and base your verdict solely on the evidence you hear in this courtroom and render a fair verdict?

JUROR BEAVERS: Again, I say it's a difficult question and I'm struggling with it in terms of I'd like to be impartial. I'd like to think I'm impartial, but I guess I'd say in the case of a child I've got my doubts.

MR. CHANCELLOR: I really kind of need a "Yes" or "No" as you can get.

Again can you base your verdict from the evidence that you'll hear?

JUROR BEAVERS: Put in those terms, yes.

Section 546.150, RSMo 1986, dating back to the early days of statehood, provides as follows:

It shall be a good cause of challenge to a juror that he has formed or delivered an opinion on the issue, or any material fact to be tried, but if it appear that such opinion is founded only on rumor and newspaper reports, and not such as to prejudice or bias the mind of the juror, he may be sworn.

Section 546.180.3, which has existed in its present form at least since 1925, provides:

In all criminal cases, a list of the jurors found by the court to be qualified to sit in the case shall be forthwith delivered by the clerk of the court to the attorney for the state who shall thereupon and within such time as may be directed by the court announce or indicate the challenges for the state. The jury list, with the state's challenges indicated thereon, shall then be forthwith delivered to the defendant or his attorney, who shall thereupon announce or indicate his challenges and return the list into court within such time as may be ordered by the court, and the remaining twelve, or if there be more than twelve, the first twelve next remaining on the list unchallenged, shall be the jury to try the cause.

The challenge for cause to Beavers should have been sustained. He had formed an opinion on the matter of punishment and gave no assurance that he would

be likely to change his opinion. The opinion was based not on rumor but on facts which would necessarily be brought out in evidence. His assurance that he could "fairly judge the case solely from the evidence ..." is not sufficient because, under the instructions, the jury had complete discretion once it found aggravating circumstances.

We have consistently held that a defendant is entitled to a full panel of qualified jurors before being required to make peremptory challenges, and that there is prejudicial error in failing to sustain a meritorious challenge for cause.[1] One of our more recent cases is *State v. Hopkins*, 687 S.W.2d 188 (Mo. banc 1985), in which a prospective juror's police officer son had been killed in line of duty while executing a search warrant. The juror said that this experience might affect his judgment as a juror. In response to the judge's question as to whether he could base his verdict solely on the evidence and the instructions his response was, "I certainly would try." We held that this response was not a sufficient assurance that he would set aside his previously announced inclinations. This is comparable to Beavers' final statement that he was not sure that he could render a fair verdict on the issue of punishment.

In *State v. Stewart*, 692 S.W.2d 295, 299 (Mo.banc 1985), there was a reversal because a prospective juror "never unequivocally stated that she would not draw any inference of guilt from defendant's failure to testify," after initially indicating that she would expect him to do so. To the same effect is *State v. Holland*, 719 S.W.2d 453 (Mo. banc 1986).

██ The state does not strongly suggest that Beavers' responses on punishment were unequivocal, but asks us to depart from our prior holdings and to adopt a rule long in effect in the state of Oklahoma, and held to be permissible under the federal constitution in *Ross v. Oklahoma*, 487 U.S. 81, 108 S.Ct. 2273, 101 L.Ed.2d 80 (1988). Under the Oklahoma rule a defendant cannot establish reversible error in the overruling of a meritorious challenge for cause unless the defendant is forced to accept the challenged juror. By this holding there is no prejudice if the challenged juror is removed by peremptory challenge. If an available peremptory challenge is not exercised, then the defendant will be held to have accepted the juror.

If this rule were extrapolated to Missouri then there would be no prejudice in failing to sustain challenges for cause in a capital case unless there were ten erroneous overrulings. The defendant could keep any lesser number of unqualified jurors from serving by exercising peremptory challenges. Our practitioners have always placed great value in the peremptory challenge and our decisions have recognized this value. We decline to depart from our long established standards, grounded on our statutes and confirmed in decisions, in favor of a holding that would severely dilute the value of peremptory challenges. Decisions of the Supreme Court of the United States applying the due process clause of the Fifth Amendment do not necessarily set a ceiling for our procedural standards. The failure to sustain the challenge to Beavers was prejudicial error.

The state argues that the Oklahoma rule is supported by the substantial weight of authority, citing cases. There is no showing, however, as to the statutory provisions in the states which hold as Oklahoma does, and a casual examination indicates that some of the citations are not definitive.[2] Our holdings are not based on abstract constitutional provisions, but on explicit statutory language. A juror who should be excluded for cause under § 546.150 is not a "qualified" juror under § 546.180.3.

The state also points to the large number of reversals for failure to sustain meritori-

---

1. *State v. Hirsack*, 465 S.W.2d 543 (Mo.1971); *State v. Foley*, 144 Mo. 600, 46 S.W. 733 (1898); *State v. McCarron*, 51 Mo. 27 (1872).

2. The state cites cases from nine states in support of its position, and cases from four other states which are in accord with our precedents. Thirteen other cases cited by the state involve a procedure very different from ours, in that preemptory strikes are made as each venireperson is questioned.

ous challenges for cause. The cure for this problem, as we have often said (see *Hopkins* and *Stewart*), lies in trial judges freely excusing jurors for cause when there are plausible challenges and also, perhaps, in prosecutors being less aggressive in trying to keep jurors whose answers indicate that challenges for cause might have merit.

It is also suggested that any conclusion that the seating of one juror rather than another makes a difference in the result is based on speculation. We of course have no means of probing the impact of any particular juror on a verdict, and it would be contrary to our tradition to permit inquiry along these lines.[3] We believe that our established rule is necessary to protect the integrity of our statutory procedure.

Because of our holding as to Beavers we do not have to decide whether the failure to sustain the challenge for cause as to Juror Morelock would require reversal. Her examination by defense counsel produced the following colloquy:

> MRS. CHAPMAN: Since what you know is from pretrial publicity, it might be possible—it might be impossible to set aside your feelings and emotions that you've developed so far and just decide the case solely on the evidence and the instructions?
>
> JUROR MORELOCK: There is a possibility yes. I would try very hard not to, but there is a possibility. I have to be honest.

Suffice it to say that the response was not wholly assuring, and that future problems could be avoided by freely sustaining challenges to jurors who give responses of this kind. This is the teaching of *Hopkins* and *Stewart*.

■ The error requires a new trial even though the juror's equivocation has to do only with the punishment. By § 546.180.3, the defendant was entitled to a panel of jurors which did not include Beavers before she was obliged to proceed with her peremptory strikes. She might well conclude that he was not the best person to judge her guilt or innocence, or the degree of her offense. The error effectively reduced her peremptory challenges.

Nor is the prejudice averted because, in this case, the court rather than the jury assessed punishment. The court's authority to fix the punishment at death is limited to a situation in which the jury unanimously finds at least one aggravating circumstance, and then reports that it is unable to agree on punishment, even though the jury does not report its precise finding of aggravating circumstances. The composition of the jury, then, remains important in cases in which the sentence comes from the court.

## 2. *Dismissal of Count I*

■ The defendant argues that she was prejudiced when the state elected to enter a nolle prosequi as to Count I, charging the murder of Jeremy, and to proceed to trial only on Count II, involving the death of Eric. The bare circumstance of being required to defend against only one charge instead of two surely does not support a claim of prejudice. The prosecutor has discretion as to what will be charged, and may not be required to proceed with a particular charge or a particular count.

■ Prejudice was argued because the state introduced evidence about the killing of Jeremy after the charges involving him had been dismissed. The evidence showed that the two boys were taken together to a motel room and contemporaneously stabbed to death. The state is entitled to introduce evidence of the circumstances surrounding the offense charged, and the relevant circumstances may include other crimes. *State v. Kenley*, 693 S.W.2d 79 (Mo. banc 1985). Any claim that the record must be purged of evidence relating to the killing of Jeremy is unsound. This record does not show any such evidence which was not properly admitted in the case involving Eric. The court on retrial will be able to balance potential prejudice and probative value as to any proffered evidence of crimes not charged.

3. *State v. Smith*, 298 S.W.2d 354 (Mo.1957); *State v. Harris*, 659 S.W.2d 565 (Mo.App.1983).

■ The defense also suggests that there will be problems of double jeopardy and collateral estoppel if the count involving Eric is tried to judgment, and the state then seeks to prosecute the defendant for the murder of Jeremy. Any such problems are foreign to this case and must be dealt with when they arise. The state must weigh any potential problems under such holdings as *Ashe v. Swenson*, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970) and *Grady v. Corbin*, —— U.S. ——, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990).

### 3. *Instructions*

The defendant complains about several instructions. We respond because instruction issues may arise on retrial.

(1) The instructions as to mitigating circumstances are challenged as contrary to *Mills v. Maryland*, 486 U.S. 367, 108 S.Ct. 1860, 100 L.Ed.2d 384 (1988) and *McKoy v. North Carolina*, 494 U.S. ——, 110 S.Ct. 1227, 108 L.Ed.2d 369 (1990). In *State v. Petary*, 790 S.W.2d 243 (Mo. banc 1990), we held that MAI–CR2d 13.44, as in effect in 1988, did not violate the *Mills–McKoy* rule. Since that time the form of instruction has been changed to eliminate any possible problem. MAI–CR 313.44 (1989).

■ The instruction is also challenged because it omitted some nonstatutory mitigating circumstances which the defendant believes should have been listed, while detailing others. There is no requirement that the instructions list nonstatutory mitigating circumstances.[4] The court on retrial should not list any nonstatutory mitigating circumstances in the instructions, because the inclusion of some might lead the jury to believe that it may not consider others. The defendant is not confined by the instructions as to the evidence and argument which may be presented in mitiga-

tion. The instructions are not erroneous for the reasons alleged.

(2) The defendant challenges the "reasonable doubt" instructions. These have been repeatedly sustained as against similar challenges.[5]

(3) The defendant challenges the "torture or depravity of mind" aggravating circumstance of § 565.032.2(7), asserting that it violates the holdings of *Godfrey v. Georgia*, 446 U.S. 420, 100 S.Ct. 1759, 64 L.Ed.2d 398 (1980), and *Maynard v. Cartwright*, 486 U.S. 356, 108 S.Ct. 1853, 100 L.Ed.2d 372 (1988). The present instructions differ from the ones given in this trial and so we need not resolve the point presented in this appeal. MAI–CR3d 313.-40 (1989).

(4) The defendant challenges the form of verdict, on the ground that the jury is obliged to find the existence of at least one aggravating circumstance before it may report to the court that it is unable to agree on the punishment, but is not required to reveal its findings of aggravating circumstances. This admits of the possibility that the court might find an aggravating circumstance that the jury had not found, but the point has been resolved against the defendant in *State v. Griffin*, 756 S.W.2d 475 (Mo. banc 1988) *cert. denied* —— U.S. ——, 109 S.Ct. 3175, 104 L.Ed.2d 1036 (1988).[6]

### 4. *Attempt to Disqualify Special Prosecutor*

■ The regular prosecuting attorney applied for the appointment of a special prosecutor because he had been involved in the defendant's dissolution proceedings. The lawyer appointed, while serving as associate circuit judge, had entered an interlocutory order in the defendant's first dissolution action. He then left

---

**4.** *State v. Smith,* 756 S.W.2d 493, 499–500 (Mo. banc 1988), *cert. denied* 488 U.S. 1019, 109 S.Ct. 823, 102 L.Ed.2d 812 (1989); *State v. Leisure,* 749 S.W.2d 366, 380–81 (Mo. banc 1988).

**5.** *State v. Murray,* 744 S.W.2d 762, 771 (Mo. banc 1988), *cert. denied* 488 U.S. 871, 109 S.Ct. 181, 102 L.Ed.2d 150 (1988); *State v. Antwine,* 743 S.W.2d 51, 62–63 (Mo. banc 1987), *cert.*

*denied* 486 U.S. 1017, 108 S.Ct. 1755, 100 L.Ed.2d 217 (1988).

**6.** The writer dissented on this point and still deems his position sound, but now defers to the majority. The problem was not starkly presented by the record in this case because the trial judge found all these aggravating circumstances of which notice had been given.

the bench and became a member of a law firm which represented the defendant in the divorce proceeding.[7] It is argued that he had access to confidential information which might be used against the defendant, because she claimed that her conduct was attributable to a bitter custody battle attending her dissolution proceedings. Complaint is also made about limiting the lawyer's deposition examination.

A prosecutor is not necessarily ineligible because he does not like the defendant. It goes without saying, however, that a prosecutor should not serve if he has access to privileged information which might be used to the defendant's detriment. Here the trial judge held a hearing and found that there was no evidence that the special prosecutor possessed any information in this category. We are unable to say that disqualification was necessary on the record before us.

### 5. *Other Points*

■ The defendant launches general challenges to Missouri's plan for authorizing the death penalty. These points have consistently been ruled adversely to the defendant.[8] It is also alleged that our statutes are unconstitutional because they do not provide a meaningful proportionality review. The state is not constitutionally obliged to provide a scheme for proportionality review. *Pulley v. Harris,* 465 U.S. 37, 104 S.Ct. 871, 79 L.Ed.2d 29 (1983).

■ Prolix claims of trial error are presented which will not necessarily occur on retrial, and so we do not consider them. The state may study the appellant's brief and decide whether there are risks as to evidence and argument which should be avoided when the case is tried again. One point which is singularly lacking in merit asserts constitutional error in exercising peremptory challenges against jurors who indicate doubts about the death penalty,

but whose doubts are not sufficient to permit excuse for cause under the *Witherspoon–Witt* test. *Cf. Gray v. Mississippi,* 481 U.S. 648, 107 S.Ct. 2045, 95 L.Ed.2d 622 (1987). An important purpose of peremptory challenges is to allow the parties to excuse a limited number of jurors whose responses or demeanor may indicate that they may be unfriendly. *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), provides a very limited exception to the principle of free exercise of peremptories, which we are not disposed to extend. Our very reversal in this case, indeed, is based on our recognition of the value of free exercise of peremptory challenges.

The judgment is reversed and the case is remanded for a new trial.

COVINGTON and HOLSTEIN, JJ., and FLANIGAN and GAERTNER, Special Justices, concur.

RENDLEN, J., concurs in result.

ROBERTSON, J., concurs in result in separate opinion filed.

HIGGINS and BILLINGS, JJ., not sitting.

ROBERTSON, Justice, concurring in result.

The Sixth Amendment requires that "[i]n all criminal prosecutions, the accused shall enjoy the right to a ... public trial by an impartial jury...." U.S. Const. amend. VI. Mo. Const. art. I, § 18(a), guarantees the accused "a speedy public trial by an impartial jury of the county." Provided it operates within these broad constitutional requirements, Missouri may determine for itself the qualifications of persons who may sit as jurors and the manner in which persons who compose a venire panel are chosen for service on the petit jury. Indeed, there is no constitutional requirement that

---

**7.** Appellant's marriage to Williams, the father of her sons, was dissolved in 1982. They remarried that same year and the marriage was dissolved again in 1984. The special prosecutor was involved only in the first proceeding.

**8.** *Gregg v. Georgia,* 428 U.S. 153, 199, 96 S.Ct. 2909, 2937, 49 L.Ed.2d 859 (1976); *State v. McMillin,* 783 S.W.2d 82 (Mo. banc 1990); *State v. Clemmons,* 753 S.W.2d 901 (Mo. banc 1988), *cert. denied* 488 U.S. 948, 109 S.Ct. 380, 102 L.Ed.2d 369 (1988).

a state's jury selection scheme include peremptory challenges. *Swain v. Alabama,* 380 U.S. 202, 219, 85 S.Ct. 824, 835, 13 L.Ed.2d 759 (1965); *Stilson v. United States,* 250 U.S. 583, 586, 40 S.Ct. 28, 29, 63 L.Ed. 1154 (1919). The United States Constitution requires no more than that the jury finally seated be impartial. *Ross v. Oklahoma,* 487 U.S. 81, 88, 108 S.Ct. 2273, 2278, 101 L.Ed.2d 80 (1988). The Missouri Constitution, too, measures its guarantee against the jury finally seated, not against the procedure by which an impartial jury is selected.

The majority is quite correct when it says "[o]ur holdings are not based on abstract constitutional provisions...." (Op. at 193). The statutes, not the constitution, control the use of peremptory challenges in this state.

In this case, the majority reverses defendant's conviction and death sentence because the trial court failed to strike a juror for cause, thereby requiring the defendant to exercise one of her ten peremptory challenges to remove that venireperson from the jury. The Court holds, "[a] juror who should be excluded for cause under Section 546.150 is not a 'qualified' juror under [section] 546.180.3." (Op. at 193).

The majority supports its conclusion on three bases. First, the majority claims that Missouri trial practitioners "have always placed great value in the peremptory challenge and our decisions recognize this value." (Op. at 193). This rationale is high sounding; it means little. The State's argument in this case does not threaten the existence of peremptory challenges, only the manner in which they are exercised. The State argues no more than that the defendant must show that the jury finally seated is not impartial; such an argument neither diminishes the "great value" of peremptory challenges nor breaks free of constitutional guarantees.

In describing peremptory challenges, this Court has said,

Experience has taught that it is not always possible to objectively demonstrate juror partiality. Not infrequently, juror partiality is subtle, elusive, and highly subjective.... Purity of the right to be tried by an impartial jury is so zealously guarded that an accused may covet his peremptory challenges and "spend" them as he alone sees fit.... The strength and integrity of trial by jury in a criminal case lies in the composite impartiality of the jury finally selected to try a particular case, and both are eroded to an unknown extent when even a single or isolated instance of partiality creeps in, whether objectively demonstrated or subjectively sensed.

*State v. Morrison,* 557 S.W.2d 445, 446 (Mo. banc 1977), *quoting State v. Thompson,* 541 S.W.2d 16, 17 (Mo.App.1976). The Court's statement in *Morrison* is simply not correct. The use of peremptory challenges has never been totally unfettered. First, the state has chosen to make an arbitrary number of peremptory challenges available to each party. Once these are exhausted, the fact that other veniremen who harbor, at least in a party's mind, a subjective manifestation of prejudice are left to serve as jurors is not grounds for reversal. This is because our system requires the parties to weigh the "highly subjective" manifestations and remove the most harmful potential jurors. As a result of this weighing process, other less (subjectively measured) biased persons become jurors if the number of peremptory challenges allowed by the statute is exhausted.

Second, *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), requires that the state explain its use of peremptory challenges against black persons in criminal cases. A requirement that a party explain a peremptory challenge renders that challenge something other than peremptory. Indeed, Justice Marshall argues that the time has come to abolish peremptory challenges altogether because they bear the potential for exercise in racially motivated ways. *Id.* at 103, 107–08, 106 S.Ct. at 1726, 1728–29 (Marshall, J., concurring in the judgment).

In sum, the purposes of peremptory challenges and the removal of veniremen for cause are identical. Each seeks to assure that the jury finally seated is as impartial

as possible. That is all our constitutions require. Because the result sought by the State does not seek to abolish peremptory challenges, but impose a harmless error standard, the first rationale advanced by the majority is makeweight.

Second, the majority claims that its holding is "grounded on our statutes." (Op. at 193). In my view, this statement is not correct. Our legislature has established a two-tiered system for determining juror qualifications. Section 494.010, RSMo 1986, provides:

Every juror, grand or petit, shall be a citizen of the state, a resident of the county or of a city not within a county for which the jury may be impaneled; sober and intelligent, of good reputation, over twenty-one years of age and otherwise qualified.

If these threshold qualifications are met, Section 494.020, RSMo 1986, announces that still other characteristics are disqualifiers, i.e., render a person "ineligible to serve as a juror." These include convicted felons, persons who are illiterate in English, active members of the armed forces, licensed attorneys at law, judges of courts of record, and persons who in the judgment of a trial judge are incapable of performing the duties of a juror by reason of mental or physical illness or infirmity. These Section 494.020 qualifications are those to which Section 494.010 refers when it says "otherwise qualified".

The majority makes no reference to Chapter 494 in its discourse. Instead, it assumes that the word "qualified" in Section 546.180.3, RSMo 1986, means objectively impartial. Inherent in this assumption, which is supported by case law as discussed later, is the notion that the General Assembly is incapable of saying "impartial" when it means to do so, despite that adjective's prominence in our constitutions. Prior decisions are apparently founded on a belief that the legislature is unable to write "bias" or "prejudice" when it so intends, despite those words' use in Section 546.150, RSMo 1986, which addresses juror challenges, as does Section 546.-180.3. An objective reading of Section 546.180.3, together with Section 494.010 and Section 494.020, shows the majority's claims that its decision is "grounded on our statutes" (op. at 193) and founded on "explicit statutory language" (op. at 193) are uncertain.

Third, the majority says that its holding is "confirmed in decisions." (Op. at 193). "We have consistently held," says the majority, "that a defendant is entitled to a full panel of qualified jurors before being required to make peremptory challenges, and that there is prejudicial error in failing to sustain a meritorious challenge for cause." (Op. at 193).

One cannot seriously dispute the principal opinion, however, for stating this conclusion. It is correct because this Court, I believe without statutory mandate, has treated the words "impartial," "competent" and "qualified" as synonyms since before the Civil War. In *Baldwin v. State*, 12 Mo.Rep. 142 (1848), this Court found no reversible error when the trial court permitted a juror who had formed an opinion about the case from newspaper accounts, but who nevertheless believed he was without prejudice, to serve. The Court said,

The information upon which the juror predicated his opinion, was derived from newspaper statements, which, of all other sources of intelligence, are the most uncertain and unreliable.... The juror further stated that he had no **prejudice or bias** on his mind. If, therefore, the question of competency is referable to the juror himself, then he was competent; but it was not his province to pass upon that question ... it was the duty of the court to decide whether, according to the facts, he was **competent** .... Where the juror **qualifies** himself under the statute, and the presiding judge accepts him, this court cannot say that an error has been committed.

(Emphasis added). *Id.* at 143–44. *See also State v. Foley*, 144 Mo. 600, 46 S.W. 733, 735 (1898) ("the defendant is entitled to a panel of 40 qualified or impartial jurors"). While there appears to me to be little etymological support for the judicial replacement of the statutory word "qualified"

with "impartial" or "competent," it is an historical fact, as is the legislature's apparent contentment with the Court's manipulation of its words.

Were this a case of first impression, I would hold that the phrase "qualified to sit" in Section 546.180.3 means only that the potential juror in question is not disqualified by Section 494.010 or Section 494.020. I would further hold that a trial court's failure to sustain a challenge for cause is prejudicial error, and therefore cause for reversal of a conviction, only to the extent it is shown that the jury finally impaneled is not impartial. The mere fact that a party must exercise a peremptory challenge to excise a biased juror is, in my view, harmless error, if the jury itself is impartial.

This is not a case of first impression, however. There is abundant precedent for the principal opinion's position, even though I believe that precedent is founded on an incorrect reading of the statutes. This is a case in which the tension between a desire to interpret the law properly and the weight of precedent is keenly felt. Because the legislature has the constitutional authority to alter the manner in which peremptory challenges are exercised, irrespective of this Court's pronouncements on the subject, and because the assumptions about peremptory challenges expressed by the principal opinion are so tightly woven into the tapestry of the law of Missouri, in this case *stare decisis* must prevail.

I, therefore, reluctantly concur in the result reached by the majority.