Arthur ARMSTRONG, Appellant,

v.

STATE of Missouri, Respondent.

No. 22210.

Missouri Court of Appeals,
Southern District,
Division One.

Jan. 26, 1999.

Susan McGraugh, S. Paige Canfield, Asst. Public Defender, St. Louis, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Anne E. Hawley, Asst. Atty. Gen., Jefferson City, for respondent.

CROW, Judge.

Appellant, tried by jury, was convicted of murder in the first degree and armed criminal action. This court affirmed the conviction on direct appeal. *State v. Armstrong,* 930 S.W.2d 449 (Mo.App. S.D.1996).

Appellant thereafter filed a timely motion per Rule 29.15[1] to vacate the conviction, maintaining that the lawyer who represented him at trial ("Defense Counsel") rendered ineffective assistance. The motion court denied relief after an evidentiary hearing.

Appellant brings this appeal from the motion court's judgment. Appellant insists Defense Counsel was ineffective in three respects and the motion court erred in ruling otherwise. Specifically, avers Appellant, Defense Counsel was remiss in: (1) failing to move to disqualify Prosecuting Attorney Ray Lee Caskey, who had "previously served substantially and personally" as a judge in the case, (2) introducing evidence of Appellant's "prior rape charge," and (3) failing to "strike" two jurors.

This opinion addresses those complaints seriatim.

As reported in this court's earlier opinion, Appellant shot the victim to death July 3, 1994. 930 S.W.2d at 450. The incident occurred in Oregon County.

■ On July 4, 1994, a two-count complaint was filed against Appellant in the Circuit Court of Oregon County.[2] Oregon County is one of the four counties in Judicial Circuit 37. § 478.167, RSMo 1994.

On the date the complaint was filed, Ray Lee Caskey (the subject of Appellant's first claim of error) was the circuit judge of Judicial Circuit 37. William R. Hass was the associate circuit judge of Oregon County.

The transcript of the motion court hearing (September 26, 1997) demonstrates that the "record" of the filing of the complaint (July 4, 1994) was shown to the motion court. Reading aloud from the record, the motion court said:

"I see here on 7/4/94 ... a docket entry, 'Two count complaint filed in the absence of Judge Haas,' [sic] from the county clerk, he says, 'the Honorable Ray Lee Caskey upon said filing and a finding by the court,' Judge Caskey, 'that sufficient facts had been stated therein to show probable cause that a felony has been committed on each count. Court orders a warrant issued for the arrest of the defendant Arthur A. Armstrong on both Counts I and II. Warrant issued and placed in the hands of the sheriff for service. Court denies bail and directs that the defendant be held without bail.' "

Caskey told the motion court he (Caskey) was circuit judge "some eight months." [3]

---

1. Appellant filed the motion December 2, 1996. References to Rule 29.15 in this opinion are to the version in Missouri Rules of Court (1996).

2. This court extracts that fact from the transcript of the motion court hearing. The complaint is not in the record on appeal. Appellant's brief, in referring to the complaint, cites this court to two pages in the legal file where the *felony information* (filed October 21, 1994) appears.

3. This court takes judicial notice that R. Jack Garrett was elected circuit judge of Judicial Circuit 37 at the general election November 8, 1994, for a six-year term beginning January 1, 1995. Official Manual, State of Missouri, 1995–1996, p. 260.

Commenting on the entry of July 4, 1994 (above), Caskey remarked:

"I think ... Judge Haas [sic] was not available the day that the complaint was filed so the clerk contacted me. The complaint was read to me and I told them to issue a warrant and because of the crime that was committed there would be no bond."

The motion court pursued its inspection of the record, announcing:

"I saw a July 5th entry of '94 that says, 'Defendant appears in custody with the public defender, the complaints are read to him. The matter of bail is considered by the court and he is ordered held without bail. Defendant is ordered held pending further proceedings.' "

As this court fathoms the transcript of the motion court hearing, the parties agreed that Judge Hass conducted the proceedings July 5, 1994 (chronicled in the entry above). In that regard, Caskey recalled: "I don't even think ... the defendant ever appeared in front of me."

According to the transcript of the motion court hearing, Caskey's only other judicial act in Appellant's case occurred when a "Motion to Disqualify Judge Haas" [sic] was filed September 15, 1994. Caskey, as presiding judge of Judicial Circuit 37, assigned another judge to the case.

Appellant pled in the motion court that Defense Counsel rendered ineffective assistance in failing to move the trial court "to disqualify ... Caskey from prosecuting [Appellant]." Appellant cited the motion court to Rule 4–1.12 of the Rules of Professional Conduct promulgated by the Supreme Court of Missouri effective January 1, 1986. Paragraph "(a)" of Rule 4–1.12 reads, in pertinent part:

" ... a lawyer shall not represent anyone in connection with a matter in which the lawyer participated personally and substantially as a judge ... unless all parties to the proceeding consent after disclosure."

A "Comment" following the above rule reads, in pertinent part:

"The term 'personally and substantially' signifies that a judge who was a member of a multi-member court, and thereafter left judicial office to practice law, is not prohibited from representing a client in a matter pending in the court, but in which the former judge did not participate. So also the fact that a former judge exercised administrative responsibility in a court does not prevent the former judge from acting as a lawyer in a matter where the judge had previously exercised remote or incidental administrative responsibility that did not affect the merits."

The motion court's findings included these:

"It is the Movant's position that ... [Defense Counsel] was ineffective for not moving to disqualify ... Caskey as prosecuting attorney in the case.

. . . .

It is the finding of this Court that the actions by ... Caskey as presiding judge in the case were 'remote or incidental administrative responsibilities' that did not affect the merits of the case. In addition, this Court is not persuaded by the argument made by Movant in connection with *State v. Ross* [, 829 S.W.2d 948 (Mo. banc 1992) ].

... had [Defense Counsel] made such a motion this would have been overruled. It was not ineffective assistance of counsel for [Defense Counsel] to do a useless act. This point is ruled against Movant."

Appellant's first point asserts the motion court erred in the above ruling. Appellant insists the "evidence" at the motion court hearing showed Caskey "had previously served substantially and personally as the judge on [Appellant's] case, creating an impermissible conflict of interest and appearance of impropriety in violation of [Appellant's] rights to due process, a fair trial, equal protection of the laws and effective assistance of counsel."

As he did in the motion court, Appellant argues here that *Ross*, 829 S.W.2d 948, supports his position.

In *Ross*, the accused was charged with assault and armed criminal action. 829 S.W.2d at 949. The charges were filed by

one Klopfenstein, a "part-time" assistant prosecutor. *Id.* The alleged victim filed a civil suit against the accused based on the incident whence the criminal charges arose. *Id.* The accused retained a law firm to represent him in the civil suit. *Id.* Unbeknownst to the accused, Klopfenstein was associated with the firm. *Id.* Mowry, a lawyer in the firm, handled the defense of the civil suit for the accused. *Id.* Unbeknownst to the accused, Mowry was also a "part-time" prosecutor. *Id.* The accused learned of Mowry's and Klopfenstein's connection with the prosecutor's office during voir dire in the criminal trial when an assistant prosecutor (not Klopfenstein) named all lawyers working for the prosecutor's office. *Id.* The accused was found guilty as charged. *Id.*

On appeal, the Supreme Court of Missouri noted: there was no evidence that anything the accused told the lawyers in the firm was communicated to the prosecutor's office; Klopfenstein did no work for the accused in the civil suit; Klopfenstein's only involvement in the criminal case was the filing of the charges. *Id.* at 949–50. Nonetheless, the Supreme Court held there was "at least the appearance of impropriety." *Id.* at 951. Consequently, said the court, the entire prosecutor's office was disqualified from prosecuting the accused. *Id.* The conviction was reversed and the case was remanded for a new trial with a directive to appoint a special prosecutor. *Id.* at 952.

There is an obvious difference between *Ross* and the instant case. Here, Caskey never represented Appellant, hence Caskey never received any information about the shooting from Appellant. Indeed, it appears Caskey never even saw Appellant during the time Caskey was circuit judge. The only substantive ruling Caskey made as judge was the determination that the facts pled in the complaint—whatever they were[4]—established probable cause to believe that the alleged offenses had been committed and that Appellant should be held without bond. The bond ruling was in effect only one day. Judge Hass considered the issue of bond when Appellant appeared before him July 5,

1994, and ordered Appellant held without bond.

The only other judicial act Caskey performed in the instant case was an administrative one—the appointment of a judge to replace Judge Hass after Hass was disqualified.

The State maintains the instant case is factually similar to *State v. Wacaser*, 794 S.W.2d 190 (Mo. banc 1990). There, a lawyer was appointed special prosecutor. *Id.* at 195. The lawyer had once been an associate circuit judge and, in that capacity, had entered an interlocutory order in a dissolution action to which the accused was a party. *Id.* The lawyer thereafter left the bench and became a member of the law firm that represented the accused in the dissolution. *Id.* at 195–96. The accused argued on appeal in the criminal case that the lawyer had access to confidential information which might be used against her in that case, as her alleged criminal conduct was attributable to a bitter custody battle in the dissolution. *Id.* at 196.

Rejecting the accused's complaint in *Wacaser*, the Supreme Court held:

"A prosecutor is not necessarily ineligible because he does not like the defendant. It goes without saying, however, that a prosecutor should not serve if he has access to privileged information which might be used to the defendant's detriment. Here the trial judge held a hearing and found that there was no evidence that the special prosecutor possessed any information in this category. We are unable to say that disqualification was necessary on the record before us." *Id.*

Inasmuch as disqualification of the special prosecutor in *Wacaser* was unnecessary, it appears that disqualification of Caskey as prosecutor in the instant case would have been unwarranted. As we have seen, in *Wacaser* a judge (1) entered an interlocutory order in a dissolution action to which the accused was a party, (2) thereafter departed the bench and became a member of the law firm representing the accused in that proceeding, and (3) subsequently prosecuted the accused in the criminal case.

---

4. Footnote 2, *supra.*

In the instant case, there is no suggestion that Caskey ever represented Appellant in any proceeding (before or after Caskey was circuit judge) or that Caskey was ever associated with a law firm that represented Appellant in any proceeding. Furthermore, as in *Wacaser*, there is no indication in the record in the instant case that Caskey had access to any privileged information from Appellant. As emphasized earlier, it appears Caskey never saw Appellant while Caskey was circuit judge. Accordingly, the motion court was arguably correct in holding that a motion by Defense Counsel to disqualify Caskey as prosecutor would have been unsuccessful.

However, it is unnecessary to speculate about how such a motion would have fared in the trial court. That is because there is another reason for denying Appellant's first point.

Appellant's brief asserts Defense Counsel was derelict in failing to discover Caskey's role as judge in Appellant's case. However, neither side called Defense Counsel as a witness in the motion court, hence the record is silent on whether Defense Counsel was oblivious of Caskey's judicial acts.

The State speculates that Defense Counsel may have been aware of Caskey's judicial acts and may have made a strategic choice to forgo any effort to disqualify Caskey as prosecutor. Because Caskey, in performing his judicial acts in Appellant's case, evidently learned nothing about the circumstances of the homicide other than the allegations in the complaint filed July 4, 1994, Defense Counsel may have preferred Caskey instead of a special prosecutor as Defense Counsel's courtroom adversary, particularly if it were likely that a special prosecutor's experience in trying murder cases would exceed Caskey's.

■ The State reminds us there is a presumption that counsel's alleged omissions are sound trial strategy, *State v. Tokar*, 918 S.W.2d 753, 766[20] (Mo. banc 1996), *cert. denied*, —— U.S. ——, 117 S.Ct. 307, 136 L.Ed.2d 224 (1996), and nothing in the record refutes the presumption that Defense Counsel's failure to seek Caskey's disqualification as prosecutor was a strategic choice.

■ Additionally, to prevail on a claim of ineffective assistance of counsel, a prisoner must satisfy two requirements. He must show (1) his lawyer failed to exercise the customary skill and diligence that a reasonably competent lawyer would have exercised under similar circumstances, and (2) the prisoner was prejudiced by his lawyer's ineptitude. *Sanders v. State*, 738 S.W.2d 856, 857 (Mo. banc 1987).

Appellant fails to explain how he was prejudiced by Caskey's service as prosecutor. Appellant says only that Caskey's involvement as prosecutor created an appearance of impropriety.

If Caskey's role as prosecutor created an appearance of impropriety—an issue this court need not decide—it was only because Caskey, as circuit judge, made the initial determination that the facts pled in the complaint established probable cause to believe the alleged offenses had been committed and that Appellant should be held without bond. There is no showing that the jurors were informed that Caskey, as judge, had made those rulings. Consequently, this court fails to see how Caskey's performance of those judicial acts could have adversely affected the outcome of Appellant's trial.

Additionally, as observed earlier, the record is bare of any indication that Caskey, during his time as judge, had access to any information from Appellant about the case, or that Caskey, after his tenure as judge, was associated in any capacity with any lawyer who had access to any such information from Appellant. Furthermore, there is no indication in the record that Caskey, while judge, learned anything about the case that he would not have subsequently discovered as prosecutor while preparing the case for trial.

■ In a proceeding under Rule 29.15, the burden is on the prisoner to prove his claim for relief by a preponderance of the evidence. Rule 29.15(i); *State v. Nunley*, 923 S.W.2d 911, 922[23] (Mo. banc 1996), *cert. denied*, 519 U.S. 1094, 117 S.Ct. 772, 136 L.Ed.2d 717 (1997). This court holds Appellant failed to prove any prejudice from Defense Counsel's failure to move the trial court to disqualify

Caskey as prosecutor. Appellant's first point is without merit.

■ Appellant's second point is based on a verbal exchange that occurred during Defense Counsel's direct examination of James L. Nicholson, a "licensed psychologist" presented as a witness by Appellant.

As recounted in this court's earlier opinion, Appellant relied on the defense of not guilty by reason of mental disease or defect excluding responsibility. 930 S.W.2d at 450. Nicholson is the psychologist referred to in that opinion. *Id.*

During opening statement, Defense Counsel alerted the jurors about Appellant's defense, explaining that on July 3, 1994, Appellant "was suffering from a mental disease which is known as schizophreniform disorder." According to Defense Counsel, drinking exacerbates that affliction and Appellant had a "long history of drinking." Defense Counsel's narrative continued:

"And in addition one time he was in West Plains he was arrested for raping a woman. Now that charge was ultimately dismissed and he was not convicted of it. However, during the course of the arrest ... one of the police officers had to hit him with a night stick in the head and since that time he has had headaches originating in the region where he was struck and radiating thourghout [sic] his brain. These are additional evidences that his brain has been damaged, that it is not functioning properly."

Consistent with Defense Counsel's opening statement, psychologist Nicholson testified Appellant suffers from schizophreniform disorder and chronic major depression. Nicholson added that Appellant "also suffers from chronic alcoholism, which complicates both of those [conditions]."

Nicholson described the steps he had taken in arriving at his diagnosis of Appellant, including the history he obtained from Appellant, the tests he had administered, and the "soft neurological signs" he had observed. Nicholson's testimony continued:

"There are two other factors and I'm sorry I didn't mean to leave them out. There are two other major factors that influence this case.

Q. And what are they?

A. One is at the time of, huh, a prior arrest, he was charged with something, I would have to think about it a moment.

Q. Was it rape that he was charged with?

A. I think it was a rape in 1983 or something.

Q. Okay, go ahead, I'm sorry to interrupt you.

A. In the course of apprehending him apparently he was hit with a night-stick and he does have headaches and this is another sign of both disorders. Prior to this time he had a history of migraine headaches, severe headaches that restricted functioning at times and causes severe disturbances. He has a history of that also, but after this he also experiences migraine phenomenon trauma possibly related, but also related by either depression or not enough alcohol to suppress it, but in the past the split brain headache is focused on the left temporal, which is also the speech area of the brain, which is somewhat of the reason he has difficulty with language and even more difficulty expressing himself if he is drinking.

Q. So, what you are saying then now not all of his memory problem and function problems are caused by the alcohol?

A. No. If that history is supported and I assume it is, he said that charge was dropped after he took a lie detector test and the other people were not willing to, but I had no way to corroborate the event and I don't know that it was subsequent to neurology."

Appellant's second point maintains Defense Counsel "was ineffective for introducing evidence of [Appellant's] prior rape charge because that evidence was not relevant to any issue presented by the defense and acted to prejudice the jury against him."

The argument following Appellant's second point makes no reference to Defense Coun-

sel's remark in opening statement about the rape arrest. Indeed, the statement of facts in Appellant's brief says nothing about Defense Counsel's opening statement. As this court understands Appellant's second point, the complaint is that Defense Counsel rendered ineffective assistance when he asked Nicholson: "Was it rape that he was charged with?"

■ Appellant reminds this court that generally, evidence of prior bad acts by an accused is inadmissible to establish his guilt of the offense for which he is on trial. *State v. Worrel*, 933 S.W.2d 431, 435[4] (Mo.App. W.D.1996).

Had there been no strategic reason for Defense Counsel to mention Appellant's rape arrest, Appellant's second point might have merit. However, it is apparent from the record that Defense Counsel had a tactical reason for revealing the arrest.

Appellant shot the victim to death in the presence of eyewitnesses. Appellant subsequently confessed the shooting to law enforcement officers. A competent lawyer would thus recognize that Appellant's only realistic chance to escape a murder conviction would be to establish the defense of not guilty by reason of mental disease or defect excluding responsibility. Nicholson was the witness upon whom that defense hinged.

One of the factors relied on by Nicholson in arriving at his conclusion that Appellant suffered from mental disease was the blow Appellant received from the nightstick during his arrest for rape.

Obviously, Defense Counsel could have cautioned Nicholson, before trial, that when he (Nicholson) mentioned the blow from the nightstick, Nicholson should not reveal it occurred while a police officer was arresting Appellant for rape. However, there was a danger that if Nicholson withheld those details during direct examination, Caskey would elicit them from Nicholson during cross-examination.

In *Smith v. State*, 774 S.W.2d 562 (Mo. App. E.D.1989), a prisoner seeking post-conviction relief argued his lawyer rendered ineffective assistance when the lawyer, during direct examination of the prisoner at trial,

adduced evidence of the prisoner's prior conviction. *Id.* at 564. Affirming the denial of post-conviction relief, the Eastern District of this court explained:

"Trial counsel's maneuver of introducing defendant's prior conviction on direct examination is an approach often used by defense attorneys when the accused testifies on his own behalf. In *State v. Lane*, 613 S.W.2d 669, 679 (Mo.App. E.D.1981), the court stated, 'appellant made the tactical decision to steal the state's thunder and adduce evidence of his prior convictions during his direct examination by his own counsel....' More recently in *Boyer v. State*, 748 S.W.2d 188 (Mo.App. E.D.1988), this court again upheld a similar course of action by defense counsel. This court classified counsel's decision as a strategic choice which is virtually unchallengeable. *Id.* at 190."

*Smith*, 774 S.W.2d at 564[3].

*Smith* was cited as authority in *Hannah v. State*, 816 S.W.2d 1, 4 (Mo.App. E.D.1991), where the Eastern District of this court said:

"A decision by trial defense counsel to introduce during direct examination all of [the accused's] possible prior convictions is a matter of trial strategy that is not only virtually unchallengeable, but is a very common and wise practice. [The accused's] defense counsel discussed his prior convictions during direct examination, thus the prosecutor was not allowed to cross-examine [the accused] concerning those prior convictions.... [The accused], thus, suffered no prejudice." (Citation omitted).

The rationale of *Smith* and *Hannah* applies in the instant case. Defense Counsel was obviously mindful that one of the factors considered by Nicholson in his diagnosis of Appellant was the blow to Appellant's head during the rape arrest. Defense Counsel was confronted by a tactical dilemma—either reveal the circumstances surrounding the blow during opening statement (and thereafter during direct examination of Nicholson) or risk Caskey eliciting those circumstances from Nicholson during cross-examination.

Defense Counsel chose the first alternative. By doing so, he made sure to tell the jurors during opening statement that the rape charge was ultimately dismissed. Additionally, when Nicholson mentioned Appellant's "prior arrest," Defense Counsel made certain Nicholson was referring to the rape arrest, not some other arrest. To further lessen any adverse juror reaction, Nicholson informed the jurors that the rape charge "was dropped after [Appellant] took a lie detector test and the other people were not willing to."

The motion court found:

> "There is nothing presented to this Court that shows that [Defense Counsel] mentioning the rape charge resulted in a showing of prejudice against Defendant.... This point is ruled against Movant."

This court's review of the motion court's judgment is limited to a determination of whether the findings and conclusions of that court are clearly erroneous. Rule 29.15(k); *State v. Kenley,* 952 S.W.2d 250, 266 (Mo. banc 1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 892, 139 L.Ed.2d 878 (1998). Such findings and conclusions are clearly erroneous only if, after a review of the entire record, the appellate court is left with the definite impression that a mistake has been made. 952 S.W.2d at 266[17].

Consistent with *Smith,* 774 S.W.2d at 564[3], and *Hannah,* 816 S.W.2d at 4, this court holds the motion court did not clearly err in finding Appellant failed to show he was prejudiced by Defense Counsel's tactical decision to reveal Appellant's rape arrest (and thereby ensure the jurors knew the charge was ultimately dismissed) instead of taking the risk that Caskey would elicit testimony about it from Nicholson on cross-examination. Appellant's second point is denied.

Appellant's final point is based on Defense Counsel's failure to "strike two jurors, Mr. Ragan and Ms. Bowers." Appellant maintains Ragan and Bowers "stated during voir dire that they did not think they could be fair to [Appellant]."

This court gleans from the argument following the point that Appellant believes De-

fense Counsel was derelict in two respects: (1) failing to challenge Ragan and Bowers for cause, § 494.470, RSMo 1994, and (2) failing to use peremptory challenges against them. § 494.480.2, RSMo 1994.

Venireman Ragan's remarks during voir dire (set forth later) must be evaluated in the following context.

Prior to voir dire, outside the hearing of the venire, Caskey presented argument to the trial court on a motion in limine he had filed. Caskey said: "There are no pretensions that there was any self-defense so any reputation or bad act or anything of the ... decedent I don't think it is at all relevant." The following dialogue ensued:

> "THE COURT: What do you say to that, [Defense Counsel]? Are you planning on trying to bring that in?
>
> [Defense Counsel]: Well, there was allegedly a dispute over money.
>
> MR. CASKEY: I don't disagree that anything between the two of them can come in.
>
> THE COURT: That won't be a problem. This guy has a reputation in the community?
>
> [Defense Counsel]: *That's why we didn't get a change of venue."* (Emphasis added.)

During voir dire, one member of the venire revealed he knew both the victim and Appellant. Asked by Defense Counsel whether that would make it difficult for him to be fair to Appellant, the venire member replied: "I knew both of them personally and, yes, it would be hard for me.... I grew up with him. I went to school with him."

At that juncture, Defense Counsel turned his attention to venireman Ragan. This colloquy occurred:

> "[Defense Counsel]: Mr. Ragan.
>
> VENIREPERSON RAGAN: Ragan.
>
> [Defense Counsel]: Long time acquaintances?
>
> VENIREPERSON RAGAN: I went all through school with him.
>
> [Defense Counsel]: You don't think you could set those aside?

VENIREPERSON RAGAN: I don't think it would be fair for either one of them."

Later in voir dire, Defense Counsel asked the venire whether it would be difficult for them to be fair to Appellant if there was evidence that he was drinking on the day the shooting occurred. The question prompted responses from several venire members, including this exchange:

"VENIREPERSON BOWERS: Kathryn Bowers. I have a real good friend that I taught with that was killed by a drunk driver.

[Defense Counsel]: So, you have real strong feelings?

VENIREPERSON BOWERS: Yes.

[Defense Counsel]: Is it going to be difficult for you to be fair to Arthur during this case because of your strong feelings?

VENIREPERSON BOWERS: It could be."

Later in voir dire, this dialogue occurred:

"[Defense Counsel]: Okay. Now, let me make clear where I'm going so you know I'm not pulling any lawyer tricks on you. Those of you that indicated that it's more likely that Arthur committed the crime based on the evidence of drinking, I would like to follow up and ask generally if those people that feel that way if you would have difficulty following the Court's instructins [sic] that Arthur is presumed to be innocent. I take it by your silence that you all feel you could set aside your feelings about alcohol and set aside your feelings about him being more likely to have committed the crime and follow the Court's instructions on presumption of innocence? Okay, I take it by your silence that you can all follow that instruction of the Court.

THE COURT: ... let me make sure I understand your question.

[Defense Counsel]: Okay.

THE COURT: Are you saying that everyone that responded positively to the question that they would have a problem because of drinking and would feel more likely that he committed the crime can now set that aside?

[Defense Counsel]: Yes.

THE COURT: Because I'm going to instruct them that he is innocent until proven guilty.

[Defense Counsel]: Exactly. That's exactly what I'm asking.

THE COURT: Does everybody understand that? Those of you that responded positively to the fact that you were against drinking and feel it was more likely that he committed the crime, are there any of you who still feel that you couldn't be fair and impartial and follow the instruction that he was innocent and presumed innocent until proven guilty beyond a reasonable doubt. Anyone that couldn't do that raise your hand."

Two venire members, neither of whom was Bowers, raised hands.

By this court's count, Defense Counsel successfully challenged 21 venire members for cause. Defense Counsel registered no challenge for cause against Ragan or Bowers and used Appellant's peremptory challenges to remove venire members other than Ragan and Bowers from the panel. Ragan and Bowers served on the jury.

As noted earlier in this opinion, neither side presented Defense Counsel as a witness in the motion court. Consequently, Defense Counsel's reasons for leaving Ragan and Bowers unchallenged are unrevealed.

■ Appellant relies primarily on two cases in support of his third point. The first is *State v. McKee*, 826 S.W.2d 26 (Mo.App. W.D.1992). There, the accused's lawyer asked the venire whether any of them would hold it against the accused if he did not testify on his own behalf. *Id.* at 27. Four venire members responded affirmatively. *Id.* The accused's lawyer challenged two of the four for cause. *Id.* The challenges were granted. *Id.* The other two (Hawley and Carter) served on the jury. *Id.* The accused subsequently sought post-conviction relief on the ground that his lawyer was ineffective in failing to challenge Hawley and Carter. *Id.*

The accused's lawyer, testifying at the post-conviction hearing, could recall no reason for failing to challenge Hawley and Carter. *Id.* at 28. The motion court denied

relief, concluding the accused failed to prove there was no strategic reason for retaining Hawley and Carter on the jury. *Id.* The appellate court reversed, holding the evidence failed to support the motion court's finding that the failure to challenge Hawley and Carter for cause was a matter of trial strategy. *Id.* The appellate court further held the failure to challenge Hawley resulted from confusion by the accused's lawyer as to which venire member made adverse responses. *Id.*

There are two manifest differences between *McKee* and the instant case. First, the record in *McKee* demonstrated no strategic reason for leaving Hawley and Carter unchallenged. That is not so here in regard to Ragan.

It is inferable from the record that the victim had an unfavorable reputation in Oregon County, which is why Defense Counsel did not seek a change of venue. Ragan's remark that it would be unfair for either the victim or Appellant if Ragan were on the jury could reasonably have been taken by Defense Counsel as an indication that Ragan harbored a bad opinion of the victim, a factor Defense Counsel could have believed would aid Appellant. It is thus arguable that there was a plausible strategic basis for leaving Ragan on the jury.

Furthermore, inasmuch as Ragan knew Appellant, it is obvious Appellant knew Ragan. Appellant did not testify in the motion court, hence there is no evidence Appellant told Defense Counsel that Ragan would be adverse to Appellant and should be removed from the venire. That buttresses the arguable inference that there was a tactical reason for leaving Ragan unchallenged.

The second difference between *McKee* and the instant case is that in *McKee* the accused's lawyer testified in the motion court and gave no reason for failing to challenge the two venire members in question. Here, Appellant did not call Defense Counsel as a witness in the motion court; consequently, the record does not show Defense Counsel lacked a strategic reason for failing to challenge Ragan for cause or strike him peremptorily.

The motion court recognized the deficiency in the evidence, stating:

"Movant's final point deals with [Defense Counsel] not striking two jurors for cause, namely Bowers and Ragan. The evidence on this point is from the trial transcript. There was no additional evidence on this point at the 29.15 evidentiary hearing. Based upon the transcript it appears that [Defense Counsel] might have moved to strike the two venirepersons for cause but the fact that [he] did not do so is not grounds for relief in this case. The responses do not make a clear cause for the granting of a 'cause' motion. This Court will not get into the mind of [Defense Counsel] and his client on why or why not certain strikes were made. Possibly they had other information that suggested that the potential jurors should be left on the panel. Movant has failed on this point also."

Mindful that the burden of proving ineffective assistance was on Appellant, *Nunley*, 923 S.W.2d at 922[23], this court holds that inasmuch as there was a plausible tactical reason for leaving Ragan unchallenged, it was Appellant's burden to demonstrate that Defense Counsel's failure to challenge Ragan was not a strategic choice, but was instead the result of inattention or oversight. To hold otherwise would offend the presumption that the alleged omissions of an accused's lawyer are sound trial strategy. *Tokar*, 918 S.W.2d at 766[20]. This court therefore holds *McKee* does not support Appellant's claim that Defense Counsel was ineffective for failing to challenge Ragan for cause or strike him peremptorily.

The other case on which Appellant places primary reliance in support of this third point is *State v. Price*, 940 S.W.2d 534 (Mo. App. E.D.1997). There, a prisoner sought post-conviction relief on the ground of ineffective assistance of counsel. One of the complaints was that counsel failed to challenge for cause three venire members who indicated they would have difficulty returning a verdict of not guilty if the accused did not testify. *Id.* at 538–39. The motion court denied relief without an evidentiary

hearing. *Id.* at 535. The appellate court held:

"Here, the motion court did not grant a hearing on defendant's Rule 29.15 motion and did not elicit any explanation from trial counsel as to why counsel did not challenge the three venirepersons for cause. The motion court's finding that trial counsel's conduct was a matter of trial strategy was not supported by the record. The motion court erred in overruling defendant's claim of ineffective assistance of counsel with regard to the failure to challenge the three venirepersons for cause without an evidentiary hearing. The court's judgment on that claim is reversed and the cause is remanded to the motion court for an evidentiary hearing on that claim."

*Id.* at 539.

As in *McKee*, there is no indication in *Price* that there was a plausible strategic reason for failing to challenge the three venire members. As we have seen, there was such a reason for leaving Ragan unchallenged in the instant case.

Furthermore, the appellate court in *Price* did not hold the prisoner was entitled to post-conviction relief; it held only that he was entitled to an evidentiary hearing on the ineffective assistance claim. Consequently, *Price* does not support Appellant's claim of ineffective assistance regarding Ragan.

█ In regard to venire member Bowers, her remark that it "could be" difficult for her to be fair to Appellant because of her strong feelings about a friend killed by a drunk driver might have warranted a challenge for cause if considered in isolation. However, when Defense Counsel and the trial court subsequently questioned the venire about drinking—the dialogue is quoted earlier in this opinion—only two venire members (neither of whom was Bowers) indicated they would be unable to be fair and impartial and presume Appellant innocent until proven guilty beyond a reasonable doubt.

█ The qualifications of a prospective juror are not determined conclusively by a single response, but are determined on the voir dire as a whole. *State v. Rousan*, 961 S.W.2d 831, 839[4] (Mo. banc 1998), *cert. denied,* —— U.S. ——, 118 S.Ct. 2387, 141 L.Ed.2d 753 (1998).

In *State v. Reynolds*, 619 S.W.2d 741 (Mo. 1981), the accused was convicted of murder in the second degree. *Id.* at 743. The victim was a four-year-old child. *Id.* One venire member said it "might" be difficult to decide the case solely on the evidence because a child was involved and the facts were gruesome and unpleasant. *Id.* at 749. However, the venire member added this should not cause her to be more likely to acquit or convict the accused. *Id.* Then, when the prosecutor explained the venire member's duty as a juror, the venire member unequivocally stated she could give the accused a fair trial, would listen to the evidence, and would deliberate on that evidence in returning her verdict. *Id.*

On appeal in *Reynolds*, the accused argued the trial court erred in denying his challenge for cause against the venire member. *Id.* at 747. The Supreme Court of Missouri disagreed, holding the trial court's ruling was not an abuse of discretion. *Id.* at 749.

Consistent with *Rousan* and *Reynolds*, this court holds the trial court in the instant case would not have erred in denying a challenge for cause against Bowers. The motion court apparently embraced that belief, as it ruled Bowers's responses "do not make a clear cause for the granting of a 'cause' [challenge]."

Furthermore, mindful that Appellant had only a limited number of peremptory challenges, § 494.480.2, which were used against other members of the venire, and that Appellant does not complain that Defense Counsel used those challenges against people Appellant wanted on the jury, this court finds no merit in Appellant's claim that Defense Counsel was ineffective in failing to use a peremptory challenge against Bowers.

Appellant's third point is denied and the judgment of the motion court is affirmed.

PREWITT, P.J., and PARRISH, J., concur.