**Paul Wayne HAM, II, Appellant,**

v.

**STATE of Missouri, Respondent.**

No. WD 56227.

Missouri Court of Appeals,
Western District.

Oct. 5, 1999.

Motion for Rehearing and/or Transfer to Supreme Court Denied Nov. 23, 1999.

Application for Transfer Denied
Jan. 25, 2000.

Rosemary Ellen McGonagle Percival, Kansas City, for appellant.

Attorney General's Office, Jefferson City, for respondent.

Before Judge HAROLD L. LOWENSTEIN, Presiding, Judge FOREST W. HANNA and Judge LAURA DENVIR STITH.

LAURA DENVIR STITH, Judge.

Appellant Paul Ham appeals denial of his Rule 29.15 motion for post-conviction relief from his convictions for first degree murder and armed criminal action. He seeks relief on two grounds. First, Mr. Ham claims he was denied effective assistance of counsel at trial when his trial counsel failed to use a peremptory strike against venireperson Olyve Huffman after the judge refused to strike her for cause. Second, Mr. Ham claims that his appellate counsel was ineffective on his direct appeal because she failed to brief the issue whether the trial court erred in refusing to strike Ms. Huffman for cause.

We find no merit in either contention. If the trial court did not err in denying the strike of Ms. Huffman for cause, she was qualified to sit as a juror, and no prejudice could have resulted from her service on the jury. This is true even if it would have been better strategy to exercise a peremptory strike against Ms. Huffman; the failure to do so could not have prejudiced Mr.

Ham for he was entitled only to 12 fair and impartial jurors, not to the 12 jurors who, in hindsight, he believes would have been most favorable to the defense. To the extent that Mr. Ham uses this argument to reargue the alleged error in failing to strike Ms. Huffman for cause at trial, he is improperly attempting to raise trial error in a post-conviction motion.

Mr. Ham is permitted to raise Ms. Huffman's alleged bias in this post-conviction proceeding in support of his second point, that appellate counsel was ineffective in failing to appeal the trial court's denial of his strike of Ms. Huffman for cause. Even assuming that counsel should have raised that issue on appeal, Mr. Ham is not entitled to post-conviction relief unless we find that he was prejudiced by the failure to do so because, had it been raised, his conviction would have been reversed and his case remanded for a new trial. For the reasons discussed below, we find that the decision of the trial court not to strike Ms. Huffman for cause was not an abuse of discretion, although it would have been better practice to have granted the motion. Accordingly, the failure to raise this issue on direct appeal did not effect the outcome of the appeal, and the trial court properly denied his motion for post-conviction relief. Affirmed.

I. FACTUAL AND PROCEDURAL BACKGROUND

Mr. Ham was sentenced by Judge Weldon C. Judah to consecutive terms of life imprisonment without the possibility of parole on his conviction of first degree murder, and 50 years on his conviction of armed criminal action. The facts giving rise to his convictions, considered in the light most favorable to the verdict, are as follows:

On September 14, 1995, Mr. Ham attended a party at Robin Lovelady's house. Also attending the party were Brandon Juarez and the victim, Ronnie Munsterman. Mr. Juarez was unhappy with the attention that Mr. Munsterman paid to

Ms. Lovelady at the party. He and Mr. Ham nonetheless left the party with Mr. Musterman, and they all went to a store. While at the store, Mr. Ham and Mr. Juarez decided to beat up Mr. Munsterman, and drove him to a rock quarry for that purpose.

According to Mr. Ham's initial statement to police, he initially hit the victim with a bottle and punched him, but, ultimately, both he and Mr. Juarez decided to "go for it." Mr. Ham then took a knife out of a sheath on his hip, stabbed the victim four times in the back, and then gave the knife to Mr. Juarez, who also stabbed the victim and then returned the knife to him. Again according to Mr. Ham's initial statement to police, he then took the knife back from Mr. Juarez and slit the victim's throat and slashed him in the groin area to be sure he would bleed to death.

Mr. Juarez confirmed in his trial testimony that this is what occurred. In his own trial testimony, however, Mr. Ham claimed that he was unaware that he had started to stab the victim until he suddenly found the knife in his hand and realized to his surprise that he had stabbed him in the back. He said that, when he saw what he had done, he gave the knife to Mr. Juarez, and was shocked that Mr. Juarez continued to stab the victim. At this point, Mr. Ham testified, he was not sure about what he should be doing, and that is why he took the knife back from Mr. Juarez. Yet, in contrast to the statement he made to the police, he indicated at trial that neither he nor Mr. Juarez injured the victim's neck or groin with the knife. Rather he testified at trial that, after he retrieved the knife from Mr. Juarez, he pulled the victim's body into a ditch to hide it. He thus admitted the killing, but denied he intended in advance to kill the victim.

The body was not found in the ditch until mid-November. By that point, according to the testimony of the medical examiner, Dr. Thomas Young, the body had decomposed to the point where much of the tissue had disappeared, so that only the stab wounds to the back and sleeve area, and a broken jaw, could be supported by the physical evidence obtained during the autopsy of the victim; the physical evidence could not be used to determine who had made what wounds on the victim.

Trial began on October 21, 1996. Mr. Ham was represented by Mr. Stuart Kahn. Mr. Kahn extensively voir dired the panel as to whether they would be able to be fair and impartial in light of evidence which would be presented about Mr. Ham's intent to beat the victim, about the use of a knife, about the fact that Mr. Ham and Mr. Juarez had been drinking, and about prior convictions. Arguably, some of these questions asked the jurors to commit themselves on certain points. Along with many other members of the venire, and as discussed in detail below, Ms. Huffman indicated that she had some concerns about the effect of these issues on her ability to be impartial. The prosecutor later asked her and the other venirepersons who had these concerns further questions in an attempt to rehabilitate them, and defense counsel then had the opportunity to again question them on these issues. The court then held a conference out of the hearing of the jury at which it considered challenges for cause and peremptory strikes.

An associate of defense counsel took notes during voir dire. At the conference following voir dire questioning, counsel used these notes and his own recollection in determining which jurors to challenge for cause. He moved to strike 21 jurors for cause. In many cases, after he would announce that he wished to strike a particular person for cause, the prosecutor would indicate that he opposed the strike and why. Defense counsel or his associate would then use their notes to elaborate on their challenge or to counter the accuracy of the reasons the prosecutor said the strikes should be denied. The trial court granted 14 of defense counsel's 21 strikes for cause; 11 of these he granted immediately, and 3 after taking the strike under

advisement. Seven of his requested strikes for cause, including his motion to strike Ms. Huffman, were denied.

When defense counsel moved to strike Ms. Huffman for cause, he stated:

No. 9, Judge, Ms. Huffman. First, with respect to convictions. That would affect her ability to be fair and impartial and she'd use that for purposes other than determining Mr. Ham's believability and credibility. Also, she had a real problem with [defendant's use of] alcohol. It would affect her. And also with respect to stabbing. Stabbing in this case would also affect her ability to be fair and impartial.

The prosecutor disagreed with this assessment of Ms. Huffman's responses, stating:

Well, Your Honor, Ms. Huffman, I believe, when the questions were asked in a framework which did not imply to her an accumulation of evidence, simply that she would listen to the evidence as it came fairly and impartially, stated that she would have no trouble doing that, and that she did not know what the evidence concerning the alcohol and drinking was, no matter how much defense counsel tried to suggest it to her, and that she would listen fairly and impartially to all the evidence.

Unlike his practice with some of the other strikes for cause, defense counsel did not assert that the prosecutor's memory of what Ms. Huffman had said was inaccurate, nor did he otherwise counter what the prosecutor had said. He was silent. It was only at this point that the court stated that he would deny the challenge for cause of Ms. Huffman.

Pursuant to Section 494.480.2(2), defendant was allowed six peremptory strikes. He used all of these strikes. Among the six people he struck were the five people, other than Ms. Huffman, as to whom his motions to strike for cause were denied. He also struck Mr. McNeiley, a juror as to whom he had put a negative mark in his

notes. Ms. Huffman served on the jury. The jury unanimously convicted Mr. Ham of first degree murder and armed criminal action.

Mr. Ham filed a motion for new trial in which he raised 89 points, point 46 of which was the allegedly erroneous denial of the motion to strike Ms. Huffman for cause. The motion was denied. On direct appeal, counsel for Mr. Ham raised only one of the 89 new trial points. That point alleged that the trial court abused its discretion during the State's closing argument when it allowed the prosecutor to waive the murder weapon in front of the jury. That point was rejected and the conviction was affirmed. *State v. Hamm*, 958 S.W.2d 607 (Mo.App.W.D. 1998).[1]

Rosemary Percival was appointed as post-conviction counsel for Mr. Ham. She filed a motion for post-conviction relief in which she alleged that Mr. Ham's counsel on direct appeal was ineffective in failing to raise as error the trial court's refusal to strike Ms. Huffman for cause. (We note that post-conviction counsel does not claim appellate counsel erred in deciding there was no merit in raising any of the other 87 points which were raised in the motion for new trial but not on appeal). She also alleged error in failing to exercise a peremptory strike against Ms. Huffman. In support, Ms. Percival argued that it would have been better for Mr. Kahn to strike Ms. Huffman instead of striking Mr. McNeiley, as the only response given by the latter was that he had not heard of the case.

The trial court held an evidentiary hearing on Mr. Ham's motion. Defense trial counsel, Mr. Kahn, testified that, while his notes did not indicate that he had placed any negative marks next to Ms. Huffman's name, based on her voir dire answers he would normally have given her a double negative. He believed that he had "inadvertently mistakenly overlooked" putting those marks next to her name, although he

---

1. Appellant's name was inadvertently misspelled "Hamm."

did recall her answers were sufficiently negative that he moved to strike her for cause. Additionally, Mr. Kahn noted that he does give double negative marks to all those venirepersons he challenges for cause as those people are usually the first to go during the peremptory stage. Lastly, with respect to Ms. Huffman, Mr. Kahn stated that he did not decide to leave Ms. Huffman on the jury as a matter of trial strategy. Mr. Kahn also stated, however, that, while he had no specific recollection of why he struck Mr. McNeiley, he did put a single negative next to Mr. McNeiley's name, indicating that he believed that Mr. McNeiley would be bad for the defense. He further consulted with his client before exercising any of his peremptory strikes and Mr. Ham agreed with all of his strikes. He said, however, he did not believe he and Mr. Ham discussed striking Ms. Huffman.

Mr. Ham's counsel on direct appeal, Susan Hogan, also testified at the evidentiary hearing. She stated that she had marked the challenge for cause issue as one which would bear looking at further when she reviewed the file, but did not say she had marked it as one which she felt would entitle Defendant to relief. She did not recall going back to this issue for legal research later, but it was an issue she had researched before. She did not believe she had read the entire voir dire. She did not believe that it would have hurt her client to raise this issue on appeal, but she did not testify that she believed she would have secured reversal on appeal had she timely raised it.

The motion court denied the motion for post-conviction relief. Mr. Ham appeals.

## II. BURDEN OF PROOF AND STANDARD OF REVIEW

We will affirm the motion court's denial of a claim of ineffective assistance of counsel under Rule 29.15 unless its findings of fact or conclusions of law are clearly erroneous. *Sanders v. State*, 738 S.W.2d 856, 857 (Mo. banc 1987); *State v. Lay*, 896 S.W.2d 693, 701 (Mo.App. W.D. 1995); *State v. Landers*, 969 S.W.2d 808, 812 (Mo.App. W.D.1998); *Meade v. State*, 779 S.W.2d 659, 660 (Mo.App. E.D.1989). A judgment is clearly erroneous when, in view of the entire record, "the reviewing court is left with the definite and firm impression that a mistake has been made." *Landers*, 969 S.W.2d at 812. The findings of the motion court are presumed correct. *Id.*; *Wilson v. State*, 813 S.W.2d 833, 835 (Mo. banc 1991).

The movant, by a preponderance of the evidence, bears the burden of proof to establish ineffective assistance of counsel. Rule 29.15(i); *State v. Nunley*, 923 S.W.2d 911, 922 (Mo. banc 1996); *Landers*, 969 S.W.2d at 812. *See also Armstrong v. State*, 983 S.W.2d 643, 647 (Mo.App. S.D. 1999); *State v. Selvy*, 921 S.W.2d 114, 118 (Mo.App. S.D.1996). To meet this burden, the movant must satisfy a two-pronged test. First, movant must show that his or her lawyer failed to exercise the customary skill and diligence that a reasonably competent lawyer would have exercised under similar circumstances. Second, the movant must show that he or she was prejudiced by counsel's failures. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Sanders*, 738 S.W.2d at 857.

With respect to the first prong, there is a strong presumption that counsel was competent. *Landers*, 969 S.W.2d at 812; *State v. Suter*, 931 S.W.2d 856, 866 (Mo.App. W.D.1996). With respect to the second prong, to support a claim of prejudice, movant must show that, but for counsel's incompetence, the outcome would have been different. *State v. Brown*, 902 S.W.2d 278, 295 (Mo. banc 1995); *State v. Ashley*, 940 S.W.2d 927, 933 (Mo.App. W.D.1997).

Where, as here, a claim is made that appellate counsel was ineffective, in order to prevail, "strong grounds must exist showing that counsel failed to assert a claim of error which would have required

reversal had it been asserted and which was so obvious from the record that a competent and effective attorney would have recognized and asserted it." *State v. Graham*, 969 S.W.2d 759 (Mo.App. W.D. 1998), *quoting, Reuscher v. State*, 887 S.W.2d 588, 591 (Mo. banc 1994).

### III. INEFFECTIVENESS OF TRIAL COUNSEL IN FAILING TO EXERCISE PEREMPTORY STRIKE

In his first point, Mr. Ham claims his trial counsel was ineffective because he failed to exercise a peremptory strike against Ms. Huffman after the trial court denied his challenge for cause. In considering this claim, it is important to keep in mind that the standard which Mr. Ham must meet to be entitled to post-conviction relief is not to show that it would have been better trial strategy to strike Ms. Huffman, but rather to show that trial counsel's failure to do so after his challenge for cause was denied was so serious and prejudicial to his client as to constitute ineffective assistance of counsel.

This is a standard which Mr. Ham cannot meet. An individual who is accused of a crime is entitled to a full panel of qualified jurors against which to exercise his peremptory challenges. *State v. Walker*, 795 S.W.2d 522, 525 (Mo.App. W.D.1990). If a juror cannot be fair and impartial, then the juror must be stricken. *Id.* Here, however, the trial court found that Ms. Huffman could be fair and impartial and denied the challenge for cause. Assuming, for the purposes of this discussion, that the trial court did not err in denying Mr. Ham's challenge of Ms. Huffman for cause, that means that all of the venirepersons remaining on the panel just prior to the exercise of the peremptory strikes were qualified to serve as jurors.

Mr. Ham has cited no cases, nor have we found any, finding counsel ineffective in failing to make a peremptory strike of a venireperson *after* a challenge for cause of that venireperson was properly denied. The cases cited by Mr. Ham, such as *State v. McKee*, 826 S.W.2d 26 (Mo.App. W.D.1992), all are post-conviction cases in which movant asserts defense counsel erred in failing to challenge an unqualified juror *for cause*. Here, by contrast, counsel did challenge Ms. Huffman for cause, but that challenge was denied by the trial court on the basis that she had been rehabilitated and was qualified. Mr. Ham asks this Court to find that, even though the trial court found Ms. Huffman could be fair and impartial, he was still prejudiced as a result of trial counsel's failure to strike her peremptorily.

Even assuming it would have been better strategy to strike Ms. Huffman, we fail to see how Mr. Ham could have been prejudiced because one qualified juror sat rather than another. There is no allegation that the juror who defense counsel struck was particularly favorable to the defense. To the contrary, defense counsel had put a negative mark next to his name, and he clearly would have been the sixth peremptory strike if the motion to strike Ms. Huffman had been granted. In other words, Mr. Ham does not claim he wanted that juror on the jury, he just claims he wanted Ms. Huffman on the jury even less, although he apparently did not so inform defense counsel when he and defense counsel discussed the proposed peremptory strikes.

Even more basically, Mr. Ham is entitled only to a panel of qualified jurors, not to his favorite jurors among those who are qualified. In other words, he is not entitled to the best possible panel, but rather to one that is free from bias and partiality. Thus, if, as the trial court found, a qualified panel was provided from which to make peremptory strikes, and counsel used those strikes to strike 6 of the 7 worst jurors for the defense, Defendant has failed to show that he was actually prejudiced by the actions of counsel, for he cannot show that the outcome would have been different had a different qualified juror served. *See Strickland*, 466 U.S. at

687, 104 S.Ct. 2052. Judge Judah made this point below in denying post-conviction relief:

> The Court does not find that for trial counsel, with the approval of Movant, to elect to exercise a peremptory strike against one member of the venire who he considered unfavorable over another member of the venire whom he also considered unfavorable constitutes ineffective assistance of counsel. Even if the act rose to the level of ineffective assistance of counsel, there has been no showing of prejudice to Movant, that is, but for the error, there is a reasonable probability that the outcome of the trial would have been different.

*Accord, Armstrong,* 983 S.W.2d at 653 ("where the Appellant does not complain that defense counsel used those challenges against people Appellant wanted on the jury, this court finds no merit in Appellant's claim that Defense Counsel was ineffective in failing to use a peremptory strike ... ").

█ Finally, we note that Mr. Ham's argument seems, most basically, to be a rather ingenious attempt to find a way to raise the trial court's alleged error in denying his challenge for cause of Ms. Huffman in the context of this post-conviction motion. Trial court error such as this must be raised on direct appeal, however, and his appellate counsel did not raise it. *State v. Brown,* 913 S.W.2d 919, 923 (Mo. App. W.D.1996); *Arbeiter v. State,* 738 S.W.2d 515, 516 (Mo.App. E.D.1987). He cannot circumvent the requirement that trial court error be raised on direct appeal by converting the alleged trial court error of denying the strike for cause into defense counsel error in failing to make a particular peremptory strike.

█ By contrast, a post-conviction motion *is* the appropriate forum in which to raise allegations of ineffective assistance of appellate counsel where, as here, the appeal was filed on or after January 1, 1996. Rule 29.15. *See also State v. Kelly,* 966 S.W.2d 382, 384 (Mo.App. E.D.1998) (pre-cluding a motion to recall mandate as a means of raising claims of ineffective assistance of appellate counsel as those claims can now be raised in a timely Rule 29.15 motion). If Ms. Huffman indeed should have been stricken for cause, and the trial court erred in denying this strike for cause, then, since this issue was preserved but not raised on appeal, it may properly be raised in a post-conviction motion only by arguing appellate counsel was ineffective in failing to raise this issue. That is the issue Mr. Ham raises in Point II, to which we now turn.

## IV. FAILURE OF APPELLATE COUNSEL TO RAISE TRIAL COURT'S ALLEGED ERROR IN REFUSING TO STRIKE MS. HUFFMAN

Mr. Ham's attorney on direct appeal was Susan Hogan. On appeal, following review of the motion for new trial, Ms. Hogan decided to brief only one of the issues raised in that motion, specifically, the alleged error by the trial court in allowing the prosecutor to waive the murder weapon in front of the jury during closing argument. This Court did not find the prosecutor's acts impermissible, and affirmed the conviction. Defendant now alleges that appellate counsel was ineffective in failing to also brief the trial court's refusal to strike Ms. Huffman for cause and that this error was so prejudicial as to entitle him to a new trial.

As noted earlier, in order to show that counsel was ineffective, movant must satisfy the two-pronged test set forth in *Strickland.* First, he must show that his lawyer failed to exercise the customary skill and diligence that a reasonably competent lawyer would have exercised under the same or similar circumstances. Second, movant must show that he was prejudiced by counsel's failures. *Strickland,* 466 U.S. at 687, 104 S.Ct. 2052. Where, as here, the allegation of ineffectiveness is as to appellate counsel, in order to prevail:

strong grounds must exist showing that counsel failed to assert a claim of error which would have required reversal had it been asserted and which was so obvious from the record that a competent and effective attorney would have recognized and asserted it.

*Graham,* 969 S.W.2d at 759. *Accord, Reuscher,* 887 S.W.2d at 591.

For the reasons discussed below, we find that the alleged error in failing to raise the challenge for cause issue would not have required reversal even had it been timely raised on appeal, and that Mr. Ham is therefore not entitled to post-conviction relief. *See Strickland,* 466 U.S. at 697, 104 S.Ct. 2052; *Meade,* 779 S.W.2d at 661 (both holding a court may proceed directly to determine whether movant is entitled to remand based on error without separately addressing appropriateness of counsel's conduct).

▮▮▮ The determination of whether we would have reversed and remanded for a new trial if the strike for cause issue had been raised on direct appeal turns on whether we would have found that the trial court abused its discretion in failing to find that Ms. Huffman was unqualified to serve on the jury because her answers on voir dire revealed she was prejudiced and so could not be fair and impartial and follow the court's instructions. To be qualified to serve on the jury, a member of the panel must be able to serve free of bias or partiality. *State v. Walton,* 796 S.W.2d 374, 377 (Mo. banc 1990). If Ms. Huffman did not meet this standard, then reversal would have been required only if she actually served on the jury. Section 494.480.4 RSMo 1994; *State v. Nicklasson,* 967 S.W.2d 596, 612 (Mo. banc 1998); *State v. Wise,* 879 S.W.2d 494, 519, n. 9 (Mo. banc 1994). *Accord, State v. Bishop,* 942 S.W.2d 945, 947 (Mo.App. S.D.1997). In *Wise,* the Missouri Supreme Court noted that prior to the 1993 amendments, Sections 546.150 and 546.180 required that the full panel of potential jurors be qualified before peremptory strikes were made, and

that reversible error would result even if the only unqualified juror was removed by a peremptory strike, and the jurors who ultimately served were all otherwise qualified. *Wise,* 879 S.W.2d at 519, n. 9. Under Section 494.480.4, however, an unqualified juror must sit in judgment of the defendant on the jury for prejudice to result. Because Ms. Huffman did ultimately serve on the jury, the question becomes whether or not she was qualified.

In rejecting Mr. Ham's claim that the trial court had abused its discretion in finding Ms. Huffman qualified to serve, the motion court indicated below that he was guided both by the principle that trial judges have "broad discretion in determining juror qualifications as [trial judges] are in a better position to evaluate the veniremember's responses," *State v. Leisure,* 749 S.W.2d 366, 375 (Mo. banc 1988), and by the principle that the "qualifications of a prospective juror are not determined conclusively by a single response but are made on the basis of the entire examination." *Brown,* 902 S.W.2d at 285, *quoting, State v. Smith,* 649 S.W.2d 417, 425 (Mo. banc), *cert. denied,* 464 U.S. 908, 104 S.Ct. 262, 78 L.Ed.2d 246 (1983); *State v. Feltrop,* 803 S.W.2d 1, 8 (Mo. banc 1991). These principles led the motion judge to conclude that the trial court did not abuse its discretion in denying the motion to strike for cause.

▮▮▮ We agree. A court should not make a decision whether a juror can be unbiased and fair based on a single response that the potential juror is concerned about a particular aspect of the case, such as prior convictions or failure of the defendant to testify. The court must also consider whether the juror, once educated as to the proper consideration of, for example, prior convictions, has indicated an ability to follow the court's instructions and only reach a verdict based on proper factors. *Walker,* 795 S.W.2d at 525. If consideration of the entire examination convinces the judge that the juror can be

fair and impartial, then the judge is not required to disqualify the juror merely because, considered alone, some parts of the juror's responses raise the bare possibility of prejudice. *Walton,* 796 S.W.2d at 377. Rather, "[i]t must clearly appear from the evidence that the challenged venireperson was in fact prejudiced." *Id.* (mere fact that venireperson expressed a great distaste for the crime of sodomy did not require disqualification, as this merely constituted feelings about the crime, not the defendant). Looking at the record of the entire voir dire in context, we conclude that it was within the trial judge's discretion to conclude that Ms. Huffman could be fair and impartial here.

 Mr. Ham claims that Ms. Huffman's responses in five areas show she could not be fair or impartial, that these claims of partiality based on these responses were preserved below, and that it was error not to raise them on appeal. Specifically, he refers us to her responses to questions about how she would be affected by evidence about Mr. Ham's: (1) prior convictions, (2) excessive consumption of alcohol, (3) intent to beat up victim, (4) use of a knife to stab the victim, and (5) having already heard of the case.

First, we note that defense counsel failed to move to strike Ms. Huffman based on her responses to the evidence that Mr. Ham intended to beat up the victim and that she had already heard of the case, and therefore any claim of error in failing to strike her for cause for those alleged biases was not preserved. An attorney will not be held ineffective for failing to raise unpreserved error on appeal. We therefore do not address these answers further. *Reuscher,* 887 S.W.2d at 590. *See also White v. State,* 939 S.W.2d 887, 904 (Mo. banc 1997); *Graham,* 969 S.W.2d at 760.

 We are thus left with the alleged error in failing to strike Ms. Huffman based on her responses to questions about Mr. Ham's prior convictions, the fact that

Mr. Ham had drunk excessive amounts of alcohol at the time of the crime, and the fact that he used a knife to stab the victim. The record of voir dire shows that defense counsel told the entire venire that his client had a number of prior convictions, which he described, including a prior conviction for child abuse. He then told the members of the venire that they could consider these prior convictions for their affect on credibility, but asked whether anyone thought it more likely Defendant committed first degree murder because he had prior convictions. No one raised their hand. He asked whether any of the members of the venire thought their ability to be fair and impartial would be affected by these prior convictions. A number of jurors responded that they would be affected. Ms. Huffman responded that it "could" affect her. Defendant did not follow up with her regarding this answer.

Defense counsel then told the venire that the case would be submitted on two counts, murder in the first degree and murder in the second degree, and that the key difference in the two counts was the state of mind of Mr. Ham. He said that there would be much evidence that Mr. Ham consumed a lot of alcohol the night of the murder, and asked who would be affected by that evidence. Ms. Huffman was one of many jurors who, again, initially said this evidence "could" affect her. And, finally, along with many other venire members, she answered that the fact that the crime involved a stabbing might make it difficult for her to be fair and impartial.

In undertaking our review of whether these answers required Ms. Huffman to be stricken, we first note that we share the concern of the trial court that, by the manner in which he asked questions about these areas, defense counsel almost seemed to be intentionally "poisoning the well" by asking questions which any honest juror would almost have to answer in the affirmative. Thus, the jury learned that this would be a gruesome case with evidence of excessive drinking, an intent to

beat the victim, and use of a knife to repeatedly stab him, and was then asked if they would be affected by this evidence. The common sense answer is that of course they would be affected by it, and indeed it is entirely proper for them to be affected by the fact that the defendant admitted he intended to beat the victim and admitted he had stabbed him multiple times. That is part of the circumstances of the crime and is very relevant to the degree of murder of which he should be convicted. Indeed, the trial judge indicated that he would have sustained an objection to most of this line of questioning if one had been made, stating:

> **Court:** I don't have an objection here, but I want to ask a question. Is it your desire to have a fair and impartial jury picked or not to have any jury pool left? You're inflaming the jury. You injected your own client's record in to them and then asked them if they're going to be able to consider that or hold it against him. You're asking the jury to speculate as to what findings they might make in the event certain evidence is adduced. There isn't any question that if the people are going to answer you honestly they're going to say, Yeah, some of these things might affect me.
>
> ... And I'm afraid what we're doing here is you are excluding from the pool a number of potential jurors, ... And I'm wondering what is the legitimate end of the inquiry here by asking them whether they are going to believe certain evidence, whether if they do hear certain evidence it's going to affect their ability to be fair and impartial. And you know the answer to that question.

When defense counsel said he thought he had a right to find out if the facts about the stabbing were too gruesome for a juror to hear objectively, since the charge was death by stabbing, the judge stated:

> **Court:** I agree, as it relates to that question, perhaps not earlier, but

there was no objection. I'm going to overrule the objection because there isn't any question that even if there's a lesser included submitted it's going to use that language. So the area is legitimate for inquiry ... But I would suggest it would be in the best interests of both sides that we kind of move this case along....

After specific questioning of certain jurors about the affect of certain publicity, the prosecutor was then given the opportunity to rehabilitate the jurors. In addressing Ms. Huffman, he said his notes reflected that drinking troubled her, and asked:

> **Q:** If you were selected as a juror on this case, would the fact that the drinking was mentioned cause you to be impartial or lose your impartiality?
>
> **A:** No, but I feel that if the drinking was to the point where there was no control of the individual, that could reflect.
>
> **Q:** But you haven't heard the evidence yet, have you?
>
> **A:** Right. No.
>
> **Q:** And all I'm asking you, ma'am, is would you listen to the evidence before you made up your mind?
>
> **A:** Yes.
>
> **Q:** And would you be fair to the defendant and to the State in listening to the evidence?
>
> **A:** Yes.

Later, defense counsel again asked Ms. Huffman about drinking, saying:

> **Q:** Would then alcohol, quite a bit of alcohol consumption in this case affect your ability to be fair and impartial?
>
> **A:** Well, I believe we're accountable for what we do. And we freely choose to drink or not drink. So if that answers your question.
>
> **Q:** It did. But I guess I'm looking for a commitment from you. Could you

be fair and impartial to Mr. Ham and to the prosecution in this case?

A: I would try to be. I still have that problem.

Q: Yes ma'am. Thank you.

In chambers, defense counsel then made a number of motions to strike various jurors because they had indicated that they could not be fair and impartial. As noted earlier, the trial court granted many of these strikes, including strikes of other venire members who had indicated that they would be troubled by use of alcohol or by prior convictions or the nature of the crime. In those instances, however, either the prosecutor agreed the person's particular responses indicated an inability to be fair, or, when the prosecutor objected to the strike, defense counsel came back and explained why the prosecutor's objection was not well-taken and why the person had not been adequately rehabilitated.

Not so with Ms. Huffman. In moving to strike Ms. Huffman, defense counsel stated:

No. 9, Judge, Ms. Huffman. First, with respect to convictions. That would affect her ability to be fair and impartial and she'd use that for purposes other than determining Mr. Ham's believability and credibility. Also, she had a real problem with alcohol. It would affect her. And also with respect to stabbing. Stabbing in this case would also affect her ability to be fair and impartial.

In response, the prosecutor stated:

Well, Your Honor, Ms. Huffman, I believe, when the questions were asked in a framework which did not imply to her an accumulation of evidence, simply that she would listen to the evidence as it came fairly and impartially, stated that she would have no trouble doing that, and that she did not know what the evidence concerning the alcohol and drinking was, no matter how much defense counsel tried to suggest it to her, and that she would listen fairly and impartially to all the evidence.

So far as the record shows, and unlike in the case of other, successful strikes for cause, defense counsel did not challenge the prosecutor's objection or his assessment of Ms. Huffman's rehabilitation. In the face of his silence, the court ruled:

All right. State's objection to the motion to strike Panelist No. 9 for cause is sustained.

We cannot say this was an abuse of discretion. While, considered alone, many of Ms. Huffman's comments are troubling, they must be considered in the context of the entire voir dire. Many of the questions seemed to seek a commitment from the jurors that they would not consider evidence, such as drinking or the use of a knife to stab the victim, which were clearly relevant to the crime and to a determination of Defendant's state of mind, and the trial court made clear on numerous occasions that he believed that an honest venireperson would thus have to answer yes when asked whether he or she would be in some way affected by such evidence.

In this regard, it is important to distinguish between a response which indicates bias against an individual, and one which simply indicates bad feeling about a crime. Thus, in *State v. Walker*, three potential jurors indicated that they would have a negative gut reaction which it would be hard to put aside and that it would "play a factor" where, as in that case, the issue was child sexual assault, but that they could follow the law. We affirmed denial of challenges for cause, stating "Review of the questions and answers at voir dire indicate an ill feeling against the crime of sodomy, not a feeling against Walker who was so charged." 795 S.W.2d at 525.

Similarly, in *State v. Blakeburn*, 859 S.W.2d 170 (Mo.App. W.D.1993), a prospective juror was asked whether he would disbelieve a witness just because he had been drinking. He answered that "I am a minister, and I do hit awful hard on drinking. I want that understood right now. I preach hard against drinking." However,

the minister also said he would listen to the witness and judge accordingly. We held it was not error to deny a strike for cause. *Id.* at 179.

*Blakeburn* in turn relied on *State v. Jurdan*, 813 S.W.2d 358 (Mo.App. S.D. 1991). Defendant in *Jurdan* was charged with driving while intoxicated. The court denied a challenge for cause of a prospective juror who testified that he thought use of excessive alcohol was scripturally wrong, because he also stated he would weigh the evidence with an open mind. *Id.* at 359–60.

We found no error in the cases just cited because the ultimate question was not whether prospective jurors indicated that particular aspects of a case would affect them or would be considered by them, but whether they would consider the evidence or an aspect of the case only as permitted by the court's instructions, and whether they would follow those instructions and be fair and impartial.

We reaffirmed this point recently in *State v. Moore*, 927 S.W.2d at 440–41, a case analogous to this one in certain respects. In that case, defendant was convicted of forcible sodomy. He alleged error in failing to strike venireperson Karban, who, he asserted, had indicated he might improperly consider defendant's prior conviction for sexual abuse as evidence of guilt of the sodomy. Defense counsel questioned one venireperson as to whether the case was all over for him due to the prior conviction, and that venireperson answered "It isn't over, but I would consider it." Venireperson Karban then said "I'm about like him. It's not going to influence my decision in this case, but it will be on my mind."

We rejected the argument that these responses indicated bias by Venireperson Karban to a degree that obligated the judge to question him further before determining his qualifications to serve. After noting the broad discretion given to the trial judge and noting that we review to see whether there is a "real probability

that the complaining party was injured," *Id.* at 440, we stated:

In this case there was nothing to trigger a duty on the part of the court to follow up. The trial court's duty to make an independent inquiry as to a potential juror's qualification arises only when the venireperson equivocates about his ability to be fair and impartial. [citation omitted] *A realistic interpretation of what the venireperson was saying is that although he cannot bring himself to forget about the fact that there is a prior conviction for sexual assault, he will consciously choose not to let his awareness of the conviction interfere with the decision he reaches in the case.*

*Id.* at 441 (emphasis added.) As *Moore* goes on to note, it is "not an unusual posture for venirepersons when confronted with information which tends to affect their view of a party. It is not an equivocation. It is a promise to set aside the negative information and to decide the case as though the negative facts were not true." *Id.*

 *Moore* further noted that knowledge of prior convictions could be relevant to credibility, and that the questions did not properly distinguish between proper and improper uses of the evidence. *Moore*, 927 S.W.2d at 441. Finally, the court noted that:

If the defense desired to challenge the venirepersons for cause, *it had a duty to follow up with questioning which would reveal that the venirepersons could not decide the case impartiality.*

*Id.* (emphasis added). The United States Supreme Court has made a similar point:

Qualified jurors need not, however, be totally ignorant of the facts and issues involved ... At the same time, the juror's assurances that he is equal to the task cannot be dispositive of the accused's rights, and it remains open to the defendant to demonstrate "the actual existence of such an opinion in the

mind of the juror as will raise the presumption of partiality."

*Murphy v. Florida*, 421 U.S. 794, 799–800, 95 S.Ct. 2031, 2036, 44 L.Ed.2d 589, 594–95, (1975), *quoting, Irvin v. Dowd*, 366 U.S. 717, 722, 81 S.Ct. 1639, 1642, 6 L.Ed.2d 751, 756 (1961). Where defense counsel fails to follow up further on questions he alleges show bias, but which can reasonably be interpreted differently, it is not error for the trial court to deny the challenge for cause. *Walton*, 796 S.W.2d at 379.

The principles set out in the above cases are directly applicable to the instant case. Here, the court and prosecutor clearly interpreted Ms. Huffman's remarks to mean she would be able to put aside her negative feelings about drinking and her other concerns, and follow the law. Defense counsel did not come back and counter that interpretation of her remarks. And, considered in context and in light of the nature of the questions asked, her answers seem to reflect not a bias against defendant, but simply a dislike of certain conduct, such as getting drunk and beating and stabbing another person. Such feelings are natural, and if they will not prevent a person from fairly judging a case in accordance with the evidence and the court's instructions, they should not preclude a prospective juror from sitting on the jury.

The trial judge was present at the trial, and was able to assess the venire members based on first-hand observation of their manner and credibility in a way that we cannot from a cold record. In light of the trial court's previously mentioned concerns about the confusion caused by the way in which defense counsel had asked the questions of the venire on these issues, in light of the care and detail with which he reviewed each strike and weighed each alleged bias, and in light of Ms. Huffman's indication she could be fair and impartial in response to further questioning by the prosecutor, we cannot say that the trial court abused his discretion in denying the challenge for cause. While the case is a close one, and while we might have acted on the side of caution by striking Ms. Huffman, we defer to the trial judge's opportunity to evaluate the proceedings and Ms. Huffman first-hand and to determine in the first instance whether it appeared she could be fair and impartial.

Although we thus determine that Mr. Ham would not have been successful on direct appeal had his counsel raised the alleged failure to strike Ms. Huffman for cause, we also remind trial judges that our Supreme Court cautioned in *Walton* that, in a case such as this, in which the question whether a member of the venire can be fair and impartial is a close one, "[i]t is puzzling that [the] trial court would run the risk of prejudice and reversal where that risk can so easily be avoided." *Walton*, 796 S.W.2d at 379. When in doubt, it would be more prudent and advisable, in the interest of judicial economy, and in the interest of avoiding even the appearance of bias or unfairness on the part of a juror, to either further question the potential juror in order to clarify any remaining ambiguities arising from his or her answers before ruling on the motion to strike, or to eliminate any potential problems by striking the potential juror in response to the challenge for cause. *Walker*, 795 S.W.2d at 525–26.

Nonetheless, we find that the motion court below did not err in holding that the failure to strike Ms. Huffman for cause would not have resulted in reversal of the conviction had it been raised on direct appeal, and we therefore affirm denial of Mr. Ham's post-conviction motion.

Judge HAROLD L. LOWENSTEIN, Presiding, and Judge FOREST W. HANNA, concur.