

NUMBER 13-09-00201-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

RAMON LUNA, RODOLFO LUNA, INDIVIDUALLY
AND AS PARTNERS IN LUNA BROTHERS
PARTNERSHIP,                                                      Appellants,

v.

ROBERTO LUNA,                                                      Appellee.

**On appeal from the County Court at Law No. 6
of Hidalgo County, Texas.**

# DISSENTING MEMORANDUM OPINION

**Before Justices Garza, Vela, and Perkes
Dissenting Memorandum Opinion by Justice Garza**

The majority reverses the trial court's judgment in favor of appellee, Roberto Luna, because it finds: (1) the evidence is legally and factually insufficient to support the trial court's finding that the parties negotiated the five-acre tract at issue for Roberto's exclusive benefit; and (2) that Roberto waived his breach of fiduciary duty,

fraud, and breach of contract claims by failing to obtain findings as to those claims. I would find the evidence is legally and factually sufficient to support the trial court's findings and accordingly, I respectfully dissent.

## I. BACKGROUND

### A. The Pleadings

This case involves a dispute between three brothers—Roberto and appellants, Ramon and Rodolfo Luna—over the equitable distribution of property held by Luna Brothers Partnership ("Luna Brothers"). The witnesses at trial included the three Luna brothers, plus the widow and son of another brother and partner, Romulo Luna Sr.,[1] now deceased.[2]

The majority infers a breach of contract claim from Roberto's pleadings, but finds the evidence insufficient to support such a claim, and concludes that Roberto waived his fraud and breach of fiduciary duty claims by failing to obtain findings.[3] I agree that we

---

[1] Romulo Luna Sr. is also referred to as "Lito."

[2] A fifth brother, Refugio Luna, also known as "Cuco," was also a partner in Luna Brothers, but left the partnership at some earlier time. The record is silent as to what property or partnership assets, if any, were distributed to Refugio at that time.

[3] Roberto's breach of fiduciary duty claim is stated as follows:

> Plaintiff had a fiduciary relationship with defendant. Plaintiff was a partner in the Luna Brothers Partnership. Defendants owe a Fiduciary Duty to Plaintiff.

> Defendant breached Defendant's fiduciary duty to Plaintiff by not giving Plaintiff his 5 acres Plaintiff is due.

> According to the oral agreement of 33 1/3% for each partner, Defendant's breach of fiduciary duty injured plaintiff by not allowing Plaintiff the use and ownership of the land ….

Roberto's fraud claim is stated as follows:

> In addition to other counts, defendant committed fraud, by stating that it was another deal. This is with malice and fraud.

2

may reasonably infer a breach of contract claim from Roberto's pleadings.  Specifically,

Roberto's pleadings stated, in relevant part:

> 6.  On or about 1979, Rodolfo Luna, Ramon Luna, Lito Luna Jr. [sic] and Roberto Luna entered into a partnership and formed Luna Bros. Partnership.  The partnership was for the primary purpose of farming and agriculture.  In 1982, the partnership lost one of its partners.  Notwithstanding, the partnership continued.  They accumulated vast amounts of land.
>
> 7.  Pursuant to their oral agreement[,] the profits of the partnership were to be divided between and among the partners according to each of the partnership interest.  The following percentages represent each partner's interest:
>
>> Rodolfo Luna -  33 1/3%
>> Ramon Luna -  33 1/3%
>> Roberto Luna – 33 1/3%
>
> 8.  During the term of the partnership[,] some land was divided as follows:
>
>> Rodolfo Luna -  40 acres
>> Ramon Luna -  40 acres
>> Roberto Luna -  35 acres
>
> This was not in line with the oral agreement.  The Luna Brothers later purchased another 5 acres from Lito Luna['s] son, that was to be for Roberto Luna and was agreed upon.  Purchase of the land was witnessed by Olivia Luna and Roy Luna.

I disagree, however, with the majority's holding that the evidence is legally and

factually insufficient to support the trial court's findings of fact and conclusions of law.

## B.  The Trial Court's Findings and Judgment

The trial court's "Findings of Fact and Conclusions of Law" stated, in their

---

Roberto also stated a claim for "equitable relief" as follows:

> Plaintiff seeks that Defendants tender the 5 acres over to Roberto Luna which is equitable.  Ramon Luna has received 40 acres, Rodolfo Luna has received 40 acres, Roberto Luna received only 35 acres and the other 5 acres had not been tendered.  It is with Malice and Fraud that the Defendants have conducted their agreement to Plaintiff, regarding the division of property.

entirety:

>The Court, after hearing all the witnesses and considered [sic] all the evidence and arguments of counsel, finds that some witnesses appeared to be less than truthful and with unclean hands.
>
>The Court further finds that Plaintiff and Defendants negotiated the five (5) acre land at issue for the exclusive benefit of Robert Luna.

The trial court's judgment stated:

>The court, after hearing the evidence and arguments of counsel, is of the opinion that the plaintiff is entitled to recover from the defendants.
>
>IT IS THEREFORE ORDERED by the court that ROBERTO LUNA be awarded 5 acres which is subject of suit from LUNA BROTHERS PARTNERSHIP or RAMON LUNA and RODOLFO LUNA.

A trial court's judgment must conform to the pleadings. TEX. R. CIV. P. 301.[4]

Pleadings must give reasonable notice of the claims asserted. *Moneyhon v. Moneyhon*, 278 S.W.3d 874, 878 (Tex. App.–Houston [14th Dist.] 2009, no pet.) (holding judgment did not conform to pleadings where judgment awarded title based on breach of fiduciary duty but plaintiff's petition did not allege breach of fiduciary duty) (citing *SmithKline Beecham Corp. v. Doe*, 903 S.W.2d 347, 354-55 (Tex. 1995)). A reviewing court should liberally construe the petition to contain any claims that reasonably may be inferred from the specific language as used in the petition and uphold the petition as to those claims, even if an element of a claim is not specifically alleged. *Id.* In making this determination, however, a reviewing court cannot use a liberal construction of the petition as a license to read into the petition a claim that it does not contain. *Id.* The petition must give fair and adequate notice of the claims being asserted, and, if the reviewing court cannot reasonably infer that the petition contains a claim, then it must

---

[4] Rule of civil procedure 301 provides, in pertinent part: "The judgment of the court shall conform to the pleadings, the nature of the case proved and the verdict, if any, and shall be so framed as to give the party all the relief to which he may be entitled either in law or equity." TEX. R. CIV. P. 301.

4

conclude the petition does not contain this claim, even under a liberal construction. *Id.*

Here, Ramon and Rodolfo did not challenge Roberto's pleadings by special exceptions. When a party fails to specially except, courts should construe the pleadings liberally in favor of the pleader. *Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 897 (Tex. 2000). The court will look to the pleader's intent and will supply every fact "that can reasonably be inferred from what is specifically stated." *Roark v. Allen,* 633 S.W.2d 804, 809 (Tex. 1982).

The pleadings, findings, and judgment in this case are not models of clarity. The witnesses provided testimony that was inconsistent, unclear, and confusing. During Roberto's testimony, he drew a map for the trial court's benefit, showing the location of various parcels of land owned and traded by the brothers, but the map was not included in the record and is not available to assist us in making sense of the testimony. Nonetheless, it is clear from the trial testimony—and I believe it was clear to the trial court—that the only issue to be decided by the court was whether Roberto was entitled to the five-acre tract on the grounds that: (1) Luna Brothers was dissolving; (2) other partnership land had been equally divided, leaving only the five-acre tract at issue; (3) Roberto was "short" five acres from the earlier partition, in which he ended up with 35 acres and Rodolfo and Ramon each received 40 acres; and (4) the brothers' oral agreement that partnership profits and assets were to be divided equally dictated that Roberto be awarded the five acres to equalize the earlier distribution.

The majority focuses—as appellants argue—on whether there was a specific agreement regarding the five acres that were purchased that Roberto would receive them. Roberto conceded that there was no such agreement. Roberto admitted that the

deed to the five-acre tract was in Luna Brothers' name, that the land was purchased with partnership money, and that he did not tell Rodolfo and Ramon that he viewed himself as entitled to the property when it was purchased. However, it is clear from the testimony that Roberto's claim is not that he and his partners explicitly agreed when the property was purchased that it was his. Rather, his claim is that their earlier agreement—the oral agreement to equally divide partnership profits—dictates that he is entitled to the property to make him whole for the earlier unequal distribution. Thus, because Roberto's claim to the property is grounded in the partners' long-standing oral agreement, the absence of an explicit agreement at the time the property was purchased is of little consequence. After hearing all the evidence, and judging the credibility of the witnesses, as it was entitled to do, the trial court agreed with Roberto.

## C. Issues on Appeal

On appeal, appellants characterize their issues as follows:

(1)     Whether the trial court erred in entering a judgment granting the 5 acres the subject of the litigation to appellee/plaintiff when the sworn testimony of both plaintiff and defendants conclusively established that an agreement was never negotiated by the parties.

(2)     Is [sic] the trial court's findings of fact that "Plaintiff and Defendants negotiated the five (5) acre (sic) land at issue for the exclusive benefit of Robert Luna" against the great weight and preponderance of the evidence.

I would construe the trial court's findings to mean that (1) the trial court believed some witnesses and disbelieved others; and (2) pursuant to the partners' oral agreement to equally split partnership assets, Roberto is entitled to the five acres in order to make him whole for the earlier unequal distribution. Accordingly, I would review the record to determine if the evidence is legally and factually sufficient to support the

6

trial court's findings.

## II. STANDARD OF REVIEW AND APPLICABLE LAW

When findings of fact are challenged on appeal, we utilize the same standards that we apply in reviewing jury findings. *Wiese v. Pro Am Servs.,* 317 S.W.3d 857, 860 (Tex. App.–Houston [14th Dist.] 2010, no pet.). When both the legal and factual sufficiency of the evidence are challenged, we first review the legal sufficiency of the evidence to determine whether there is any evidence of probative value to support the factfinder's decision. *Wiese,* 317 S.W.3d at 860. In a legal sufficiency or no evidence review, we determine whether the evidence would enable reasonable and fair-minded people to reach the finding under review. *Id.* (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005)). In conducting this review, we credit favorable evidence if reasonable factfinders could and disregard contrary evidence unless reasonable factfinders could not. *City of Keller,* 168 S.W.3d at 827. We must consider the evidence in the light most favorable to the finding under review and indulge every reasonable inference that would support it. *Id.* at 822. We must, and may only, sustain no evidence points when either the record reveals a complete absence of evidence of a vital fact, the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, the evidence offered to prove a vital fact is no more than a mere scintilla, or the evidence establishes conclusively the opposite of the vital fact. *Id.* at 810.

In reviewing factual sufficiency, we consider all of the evidence and uphold the finding unless the evidence is too weak to support it or the finding is so against the overwhelming weight of the evidence as to be manifestly unjust. *Girdner v. Rose*, 213

S.W.3d 438, 445 (Tex. App.–Eastland 2006, no pet.); *Gentry v. Squires Constr., Inc.*, 188 S.W.3d 396, 408 (Tex. App.–Dallas 2006, no pet.). The trier of fact is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *Girdner*, 213 S.W.3d at 445; *Gentry*, 188 S.W.3d at 408. The amount of evidence necessary to affirm a judgment is far less than that necessary to reverse a judgment. *Gentry*, 188 S.W.3d at 408.

It is presumed that all fact findings needed to support the judgment were made by the trial court. *Id.* After the trial court files its original findings of fact and conclusions of law, any party may file a request for specified additional or amended findings or conclusions with the clerk of the court. *Id.* (citing TEX. R. CIV. P. 298). The failure of a party to request additional or amended findings or conclusions waives the party's right to complain on appeal about the presumed finding. *Id.*

### III. THE EVIDENCE

The trial court heard the testimony of five witnesses, in this order: defense witnesses Rodolfo and Ramon, followed by plaintiff's witnesses Roberto, Romulo Luna Jr. (son of the eldest Luna brother, Romulo Sr.), and Olivia Luna, Romulo Sr.'s widow.[5]

### A. Rodolfo Luna

In the late 1970s, the five Luna brothers decided to distribute property held by Luna Brothers partnership. Roberto, who chose second, chose a tract containing thirty acres. Rodolfo chose third, and chose a tract containing forty acres. Rodolfo then gave Roberto five acres, leaving each with thirty-five acres. Each of the three other brothers received forty-acre tracts. At some point, Rodolfo and Romulo Sr. traded parcels, leaving Romulo Sr. with thirty-five acres and Rodolfo with forty acres. Later, Roberto

---

[5] There is no explanation as to why the defense presented its witnesses first.

8

traded some property with Romulo Sr. After these trades, Roberto and Romulo Sr. each had thirty-five acres, and the other three brothers had forty acres. In the early 1980's, Romulo Sr. died and willed five acres to his son, Roy.[6] Roy then sold the five acres to Luna Brothers.

On cross-examination, Roberto's counsel attempted to establish that Roberto "actually farmed those five acres," but Rodolfo said that the brothers "worked together" in farming the tract. Roberto's counsel also asked Rodolfo whether he had attempted to get Romulo Jr. to sign over some land. Rodolfo said that some paperwork had been drawn up, and that they had paid Olivia some money for the land. Rodolfo said that Roberto told him to get Romulo Jr. to sign the paperwork because "they" had already made some payments.[7] In response to Roberto's counsel's questions as to whether "everything has been split up," Rodolfo responded affirmatively and said that "everybody got equal."

## B. Ramon Luna

Ramon's testimony did not differ significantly from Rodolfo's. When Luna Brothers purchased the five acres from Roy, Roberto did not tell them that he viewed the five acres as his. Ramon said that Luna Brothers has always paid the taxes and that they "farmed it together." Ramon worked on the five acres, along with his son and nephew. According to Ramon, Roberto paid Luna Brothers' rent on the property for three years, and then refused to continue paying rent. Ramon suggested that Roberto would not have paid rent if he believed the property was his.

---

[6] Roy was deceased at the time of trial.

[7] It is not clear who "they" refers to; presumably, either Rodolfo and Ramon or Luna Brothers.

9

On cross-examination, Ramon said that he wanted to retire in 2000, but planned to keep on farming. He also stated that "everything we [Luna Brothers] bought was between us. We would agree."

## C. Roberto Luna

Roberto testified that when he was seventeen, he dropped out of school to help his father and Romulo Sr. farm their property. At the time, Rodolfo and Ramon were in school. Roberto testified that after the initial distribution of property, he and Romulo Sr. traded some property, and he also gave five acres of his own ("not part of Luna Brothers") to Romulo Sr. Roberto said Rodolfo's testimony that he had exchanged property with Romulo Sr. was not true; Roberto and Rodolfo had exchanged property, not Rodolfo and Romulo Sr. When Romulo Sr. died, and Roy inherited five acres from his father, Roberto spoke to Roy about Luna Brothers purchasing the five acres. Roberto spoke to Roy's mother, Olivia, about who should pay for the five acres. Roberto told Olivia that Luna Brothers should pay for the land (instead of Roberto individually) because the other brothers had each received forty acres of Luna Brothers' property. When Roberto was asked whether he "negotiated this deal with Roy Luna and with Olivia," he said, "yes." Specifically, Roberto testified that he told Olivia:

> "I cannot buy the land because my brother has got 40 acres and Luna Brothers paid for those 40 acres. Why should I pay for this five acres? Let Luna Brothers pay for the five acres." Otherwise, if I had known that I wasn't going to get that, I would have kept that five acres.

Roberto said he did not tell his brothers that even though he was purchasing the property with Luna Brothers funds, he viewed it as his own. Roberto stated that the five acres is adjacent to his property. Roberto said that on every partnership deal he made, he "was always thinking of the one-third, Luna Brothers. That's the contract we've got

10

there." Roberto said that he "always counted [his brothers] in," even though he "could have left them out a long time ago." Roberto's brothers "got mad at [him]" because they wanted to sell some property near Laguna Seca and retire, but Roberto did not want to sell the property. Instead, Roberto told the realtor that he wanted "more land," and he continued to acquire additional land for the partnership. Roberto said that even though he had acquired an additional 871 acres for Luna Brothers, his brothers "can't even give me five acres that I deserve." According to Roberto, his brothers have been semi-retired since 2000 and "only worked when they wanted to." Roberto said that Rodolfo "barely worked" in 2000, but he never confronted Rodolfo about not working. When his brothers were absent, Roberto and his son did the work because it "has to be done." Roberto paid rent on the five acres because he just "wanted to farm" and paid so he could "work the land." Roberto paid the taxes and did "most of the work" farming the five acres.

Roberto said Rodolfo was "lying" when he testified that Roberto had instructed him to try to get Romulo Jr. to sign a release. Roberto said he "didn't even know about it" and that if Romulo Jr. had signed the release, they (presumably Romulo Jr. and Olivia) would have lost sixteen acres. When Roberto was asked if he purchased the five acres "to make [him] whole," Roberto answered, "To make up for the ones that were supposed to be mine, that were mine. Those were mine."

On cross-examination, appellants' counsel confirmed Roberto's testimony that when he purchased the five acres, he did not discuss with appellants that he viewed the property as his own. When asked why he initially chose a thirty-five-acre tract instead of a forty-acre tract, Roberto said, "but we were not splitting, like we're doing it right

11

now." He noted that if the earlier partition had been for the purpose of making a final division of partnership property, "then all the deals, they were going to be different." The trial court questioned Roberto as follows:

> [The Court]: Is your testimony that it was split in that sense because there was some other property still belonging to the partnership?
>
> [Roberto]: Right.
>
> [The Court]: That could be divided to add on to this?
>
> [Roberto]: Right.
>
> [The Court]: To where everyone would get equal shares? Is that what you're saying?
>
> [Roberto]: Yes, sir.

On re-direct examination, Roberto said the purpose of the earlier partition was so that the brothers individually would have property in their names to use as collateral if they so desired. Roberto said, "[o]therwise, we would have divided equally, every—like we're doing right now . . . ." In 2000, Ramon "threw the books at [Roberto]" and "didn't want to do anything with Luna Brothers." After that, Roberto took care of the books, "had to take care of the workers, bring them home and everything." Rodolfo occasionally threatened Roberto that he would call his lawyer and told Roberto , "We're two, and you're only one."

Roberto farmed the five acres together with adjacent land from Romulo's estate and some acreage out of his own thirty-five acres. One year, he was farming the five acres and "they went in and destroyed what I had planted. They didn't let me finish the crop, you know, because they said it was theirs."

12

On re-cross-examination, appellants' counsel noted that Romulo Sr. had also received thirty-five acres, and therefore Roberto was not "the only one that ended up with 35 acres." Roberto responded, "Right, because we weren't dividing. We weren't splitting up. We still had more land to make up for the ones that didn't—that didn't get the 40 acres. We had more land."

## D. Romulo Luna Jr.

Romulo Jr. testified that on several occasions, Rodolfo and Ramon came to his workplace to try to get him, his mother, and sister to sign a release of lien on land that they owned. Romulo Jr. spoke to Roberto about the visits; Roberto told him not to sign the release and that Ramon and Rodolfo should not have approached him. Romulo Jr. testified that Ramon and Rodolfo were pressuring him to sign the release. He felt they were not dealing with him honestly and that he "was being betrayed by [his] own family."

On cross-examination, Romulo Jr. admitted he did not actually see the documents that Rodolfo and Ramon were pressuring him to sign. On re-direct examination, Romulo Jr. said he cannot trust Rodolfo and Ramon.

## E. Olivia Luna

Olivia testified that when Roberto discussed purchasing the five acres from Roy, Roberto said he was purchasing the land "to complete his 40 acres because everybody else had 40 acres." Olivia said that after her husband died, Ramon and Rodolfo told her that there was no longer any right to land held in Romulo Sr.'s name in Encino and El Coyote.

## IV. Discussion

13

On appeal, appellants have challenged only the sufficiency of the evidence supporting the trial court's findings.[8] As to the challenged findings, the trial court heard evidence that: (1) on every transaction negotiated by Luna Brothers, Roberto was always "thinking of the one-third, Luna Brothers," because "[t]hat's the contract we've got there"; (2) except for the five acres, the partners had split the partnership land equally; (3) Roberto claimed he was entitled to the five acres because Rodolfo and Ramon received 40 acres in the earlier partition and he only received 35 acres; (4) because the initial partition was not a final division of partnership property, there was no need for the division to be equal at that time because shares could be later equalized by dividing additional partnership land; (5) Roberto paid taxes on the five acres and farmed it; (6) in recent years, Roberto did most of the work farming land for Luna Brothers; and (7) without Roberto's knowledge, Rodolfo and Ramon attempted to obtain a release of lien on property from Romulo Jr.

The evidence favoring appellants was: (1) in the initial partition, Roberto voluntarily chose a thirty-five-acre tract, even though he could have chosen a forty-acre tract; and (2) when Roberto purchased the five acres with Luna Brothers funds, he did not discuss with Rodolfo and Ramon that he viewed the property as his and there was no agreement that it was purchased for his benefit.

The trial court was in the best position to judge the credibility of the witnesses and we should not substitute our judgment for that of the trial court. *See Gentry*, 188

---

[8] In the argument section of their brief, appellants essentially make the same argument: that Roberto's own testimony "conclusively establish[ed] the fact that no agreement or representation were ever made that the 5 acres were being purchased for [Roberto's] exclusive benefit." I construe this argument as a no-evidence challenge to the trial court's findings. *See City of Keller v. Wilson*, 168 S.W.3d 802, 810 (Tex. 2005) (noting that we sustain a no evidence challenge when, among other circumstances, the evidence establishes conclusively the opposite of the vital fact).

14

S.W.3d at 408. I would hold that the evidence is legally and factually sufficient to support the trial court's findings.

## V. Conclusion

I would overrule appellants' issues and affirm the trial court's judgment.


DORI CONTRERAS GARZA
Justice

Delivered and filed the
28th day of April, 2011.